## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH D. ROUSE, JR.,            ) | |
|           ) | |
|         Plaintiff,    ) | |
|           ) | |
|       v.         ) | Civil Action No. 06-2088 (RWR) |

RALPH D. ROUSE, JR.,

             Plaintiff,

    v.

LINDA M. SPRINGER, Director, U.S. Office
of Personnel Management,

             Defendant.

Civil Action No. 06-2088 (RWR)

## MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), defendant Linda M. Springer,

Director, Office of Personnel Management, respectfully moves the Court to dismiss this action.

The accompanying memorandum sets forth the grounds for this motion.

Dated: March 16, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

JOSEPH W. LOBUE
Assistant Director,
Federal Programs Branch

s/ Justin M. Sandberg
JUSTIN M. SANDBERG
(Ill. Bar. No. 6278377)
Trial Attorney, Federal Programs Branch
Civil Division, U.S. Department of Justice
P.O. Box 883
Washington, D.C. 20044
(202) 514-3489 (telephone)
Counsel for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RALPH D. ROUSE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 06-2088 (RWR) |
| LINDA M. SPRINGER, Director, U.S. Office of Personnel Management, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

Plaintiff Ralph Rouse alleges that the Office of Personnel Management ("OPM") has

violated §§ 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794, by contracting with an

insurance consortium, Long Term Partners, LLC (also "Partners"), which denies full long term

care insurance coverage to individuals who use wheelchairs.  As we explain in Point I below,

plaintiff's claims under §§ 501 and 504 are governed by the standards applied under the

Americans With Disabilities Act ("ADA").  See 29 U.S.C. §§ 791(g) and 794(d).  Subject to a

narrow limitation that is not implicated in the circumstances of this case, the ADA, by its terms,

provides that it shall not be construed to prohibit or restrict a covered person or organization

from "establishing, sponsoring, observing or administering the terms of a bona fide benefit plan,"

42 U.S.C. § 12201(c)(3), such as the long term care insurance plan at issue here. Consequently,

1

plaintiff's allegation that OPM violated the Rehabilitation Act by sponsoring such a plan is wholly without merit.

Plaintiff's claim under § 504 is also foreclosed by binding D.C. Circuit precedent holding that disability-based employment discrimination claims by federal employees are governed exclusively by § 501, and may not be brought under § 504.  See Point II.

For both reasons, the Court should dismiss this action for failure to state a claim upon which relief can be granted.

## BACKGROUND

### A.    Federal Long Term Care Insurance Program ("FLTCIP" or "program")

The Long Term Care Security Act ("LTCSA"), 5 U.S.C. § 9001 et seq., authorizes OPM to establish and administer a program through which current and former federal government employees (and their qualified relatives) – eligible individuals – may obtain long term care insurance coverage.  5 U.S.C. §§ 9001(6), 9002(a).  Long term care insurance is provided through "qualified long term care insurance contracts" which cover "necessary diagnostic, preventive, therapeutic, ***and rehabilitative services, and maintenance and personal care services, which (A) are required by a chronically ill individual, and (B) are provided pursuant to a plan of care prescribed by a licensed health care practitioner."  26 U.S.C. §§ 7702B(b)(1)(A), (c)(1) (which are incorporated into the LTCSA by reference in 5 U.S.C. § 9001(9)); see also S. Rep. No. 106-344, 2000 WL 970179 at 17 (noting that long term care refers to "a wide range of health and support services for persons who have lost the capacity for self care.  Long term care services include home and community based services as well as those provided in nursing homes and other institutions.").

2

The program is not designed to provide universal coverage: "Nothing in this chapter shall be considered to require that long-term care insurance coverage be guaranteed to an eligible individual." 5 U.S.C. § 9002(e)(3); see also id. § 9002(e)(1). But it does guarantee, with certain limited exceptions, that an eligible individual who receives coverage and makes timely premium payments can renew that coverage. Id. §§ 9002(f), 9003(b)(1)(D). Congress delegated to OPM the authority to negotiate contracts with insurance carriers for long term care insurance policies; the contracts are to prescribe the policies' benefits and premiums. Id. §§ 9003(a), (b). OPM sought to achieve the dual objectives of offering coverage to those who are eligible and, at the same time, maintaining competitive premiums. Federal Long Term Care Insurance Regulation, 70 Fed. Reg. 30605 (May 27, 2005). OPM negotiated a plan for insurance with Long Term Care Partners, which is a joint venture between the John Hancock Life Insurance Company and the Metropolitan Life Insurance Company. See Complaint ("Compl."), Dec. 8, 2006, ¶ 14. OPM sponsors the plan; Partners administers the plan; and, John Hancock and Metropolitan Life offer the insurance. Id. OPM did not contract for a plan offering guaranteed coverage to all eligible individuals because offering guaranteed coverage would result in significantly higher premiums and potentially jeopardize the viability of the program. 70 Fed. Reg. at 30605.

**B.     Plaintiff's Application for Insurance**

Mr. Rouse works for the United States Department of Health and Human Services. Compl. ¶ 6. He applied for long term care insurance offered through the FLTCIP. Id. ¶¶ 13, 15. Question five of the insurance application asks the applicant whether he or she uses any of a number of devices, including a wheelchair. Id. ¶ 16. The application states that full insurance coverage is unavailable if the answer to question five is "yes." Id. Mr. Rouse indicated on his

application that he uses a wheelchair and submitted the application to Long Term Care Partners. Id. ¶¶ 15, 16.  Partners responded with a letter explaining that it was declining to cover plaintiff under the standard plan (i.e., to provide full coverage) because he answered yes to question five. Id.  ¶¶ 16-17.

## ARGUMENT

Plaintiff alleges that OPM's contract with Partners permits the company to deny long term care insurance to an individual whose application for insurance reflects that the individual uses a wheelchair, and thereby unlawfully discriminates against plaintiff on the basis of his disability in violation of §§ 501 and 504 of the Rehabilitation Act.  See 29 U.S.C. §§ 791 and 794.  These allegations fail to state a claim upon which relief can be granted for two reasons. First, employment discrimination claims under the Rehabilitation Act are governed by the substantive standards applied to such claims under the ADA, and those standards make it quite clear that, subject to a narrow limitation that is inapplicable here, the ADA is not to be construed to prohibit or restrict a covered entity from establishing, sponsoring, or administering a bona fide benefit program, such as the federal long term care insurance program at issue here.   Second, it is established in this Circuit that federal employees cannot assert a cause of action for employment discrimination under § 504 of the Rehabilitation Act, as § 501 of the Act prescribes the exclusive means for raising such claims.[1]  For both reasons, this action should be dismissed.

_____

[1] Sections 501 and 504 provide different remedies and have different exhaustion requirements.  McGuinness v. U.S. Postal Serv., 744 F.2d 1318, 1321 (7th Cir. 1984).

I.      **The Rehabilitation Act Does Not Prohibit Or Restrict A Covered Entity's Authority To Establish, Sponsor, Or Administer The Terms Of A Bona Fide Benefit Plan Such As the Federal Long Term Care Insurance Program**

Section 501 of the Rehabilitation Act provides that "[t]he standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the [ADA] (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the [ADA] (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment." 29 U.S.C. § 791(g).  A substantially identical provision applies to "complaint[s] alleging employment discrimination" under § 504. Id. § 794(d).

Title I of the ADA provides that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  It also defines the term "discriminate" to include, in relevant part, "participating in a contractual or other arrangement * * * that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter." 42 U.S.C. § 12112(b).

The type of "discrimination prohibited by this subchapter" is further delineated in § 12201(c) of the ADA, which is entitled "Insurance."  That section creates a safe harbor which establishes, with respect to plans governed by state insurance law, that the non-discrimination provisions of the ADA "shall not be construed to prohibit or restrict" an insurer or other entity that administers benefit plans from "underwriting risks, classifying risks, or administering such risks that are based on or not inconsistent with State law." 42 U.S.C. § 12201(c)(1).  Subsection

5

(c)(2) provides that the Act does not prohibit or restrict a covered person or organization "from establishing, sponsoring, observing or administering" such a plan.  Id. § 12201(c)(2).  A companion provision states that the non-discrimination provisions of the ADA "shall not be construed to prohibit or restrict" a covered organization "from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance."  42 U.S.C. § 12201(c)(3).  The statute authorizing OPM to enter into a contract for long term care insurance specifically exempts the resulting plan from state law: "The terms of any contract under this chapter [between OPM and an insurance provider] which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to long-term care insurance or contracts."  5 U.S.C. § 9005(a).  Thus, § 12201(c)(3) governs the plan administered by Partners.

Section 12201(c)(3) states that the sections of the ADA dealing with employment discrimination "shall not be construed to prohibit or restrict" an organization from "establishing, sponsoring, observing, or administering the terms of a bona fide benefit plan."  42 U.S.C. § 12201(c)(3).  To be bona fide, a plan need merely "exist[ ] and pay[ ] benefits."  Public Employees Retirement System of Ohio v. Betts, 492 U.S. 158, 166 (1989) (quoting United Air Lines v. McMann, 434, U.S. 192, 194 (1977)); see also EEOC v. Aramark Corp., 208 F.3d 266, 269 (D.C. Cir. 2000).  Plaintiff does not dispute that the plan at issue exists and pays benefits; indeed, as relief, plaintiff requests full coverage under the plan, Compl. at p. 9 ("Prayer for Relief").  Thus, the plan offered by Partners is plainly a bona fide benefit plan which falls within the scope of the safe harbor clause.

Nor does the plan run afoul of the statutory limitation on the use of the safe harbor provisions. 42 U.S.C. § 12201(c). In that regard, the statute provides that the safe harbor provisions "shall not be used as a subterfuge to evade the purposes of" the ADA's non-discrimination provisions. Id.

As the Courts have made clear, this limitation is quite narrow in scope. In Betts, in the context of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Supreme Court interpreted a safe harbor provision with a subterfuge clause nearly identical to the one included in the ADA. Betts, 492 U.S. at 161. While the ADEA generally forbids arbitrary age discrimination in employment decisions, the Supreme Court concluded that the safe harbor provision in the ADEA allowed employers to make age-based employment decisions pursuant to the terms of any bona fide employee benefit plan, so long as the plan was not a subterfuge to evade the purposes of the Act.[2] Betts, 492 U.S. at 161. The safe harbor provision at issue in Betts, much like the analogous provision in the ADA, stated, in relevant part, that it was not unlawful for an employer "'to observe the terms of *** any bona fide employee benefit plan such as a[n] *** insurance plan, which is not a subterfuge to evade the purposes of this chapter.'" Betts, 492 U.S. at 165 (quoting 29 U.S.C. § 623(f)(2) (1982 ed. and Supp. V)).

Initially, the Betts Court decided, based on the language of the statute, that the subterfuge clause did not require employers or plan providers to provide age-related cost justifications for distinctions made by plans (i.e., according to the Court, employers and plan providers did not need to demonstrate that they treated older workers differently because it costs more to provide

---

[2] Following the Betts decision, Congress amended this provision through the Older Worker Benefits Protection Act § 103(1) (codified at 29 U.S.C. § 623(f)(2)).

benefits for older workers).  Id. at 169-75.  In the course of rejecting the cost-based justification argument, the Court, relying on McMann, 434 U.S. at 203, defined the term "subterfuge" to mean "a scheme, plan, stratagem, or artifice of evasion."  Id. at 171.  And moving on to the last few words of the subterfuge clause, the Court held that a plan must violate the substantive provisions of the ADEA to evade that Act's purposes.  Betts, 492 U.S. at 176.  It explained that no other interpretation would make sense because the substantive provisions of the ADEA are the means by which its purposes are expressed and carried out.  Id.

Accordingly, the Betts Court concluded that a benefit plan would not constitute a subterfuge unless the plan "actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation."  492 U.S. at 181.  The safe harbor clause explicitly allowed benefit plans to distinguish among employees based on their age.  Betts, 492 U.S. at 161.  Therefore, the Court reasoned that the plan at issue, which made age-based distinctions affecting the amount of retirement benefits available, did not violate the substantive provisions of the ADEA insofar as the dispersal of fringe benefits was concerned.  Id. at 182.  To demonstrate a violation of the ADEA, the Court held, the plaintiff had the burden of proving that the plan furthered discrimination with respect to an aspect of the employment relationship unrelated to the retirement benefits (and, therefore, not covered by the safe harbor provision).  Id. As an example of an employer using a benefit plan to discriminate with respect to a non-fringe-benefit aspect of the employment relationship, the Court stated that if an employer were to lower the wages of all employees and subsequently increase the benefits to younger workers, then the benefit plan might be a subterfuge to violate the ADEA's prohibition against age-based wage

discrimination.  Id. at 180.  In closing, the Court concluded that the plaintiff had failed to meet

her burden to prove that the benefit plan was a subterfuge.  Id. at 182.

    Most of the courts that have interpreted the ADA's subterfuge clause, including the D.C.

Circuit, have closely followed the Betts decision.  See, e.g., Aramark Corp., Inc., 208 F.3d at

269; Modderno v. King, 82 F.3d 1059, 1064-65 (D.C. Cir. 1996); Leonard F. v. Israel Discount

Bank, 199 F.3d 99, 104 (2d Cir. 1999); Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 78-79

(8th Cir. 1996); but see Johnson v. K Mart Corp., 273 F.3d 1035, 1059 (11th Cir. 2001)

rehearing en banc granted, opinion vacated (Dec. 19, 2001).[3]  They reason that Congress adopted

the ADA's subterfuge clause after Betts had been decided, and when Congress includes language

that has a settled meaning in a statute, courts ordinarily presume that Congress intended for that

---

    [3] Johnson v. K Mart Corp., 273 F.3d at 1059, a decision by a panel of the Eleventh Circuit that was subsequently vacated pending rehearing en banc, concluded that the Betts interpretation of the subterfuge clause in the ADEA should not be applied in construing nearly identical language in the ADA.  According to Johnson, Betts concluded that a plan must discriminate with respect to a non-fringe-benefit aspect of the employment relationship because the Betts Court found that fringe benefits were not included in the ADEA's general prohibition against age discrimination.  Id.  In contrast, the Johnson panel held, the ADA's general anti-discrimination prohibition encompasses discrimination in the provision of fringe benefits.  Id.  Thus, the Johnson opinion concluded that a plaintiff suing under the ADA need not show discrimination with respect to a non-fringe-benefit aspect of plan.  Id.

    Johnson is inconsistent with the rationale of the D.C. Circuit in Aramark and Modderno and, in any event, rests on a misinterpretation of Betts.  The Betts court decided that a plaintiff had to demonstrate discrimination with respect to a non-fringe-benefit aspect of his or her employment relationship because the safe-harbor provision exempted fringe benefits from the reach of the general anti-discrimination provision of the ADEA, not because that provision did not otherwise cover fringe benefits.  Betts, 492 U.S. at 177.  Thus, the difference relied on by the Johnson court is non-existent, and the Betts rationale (i.e., to prevail, a plaintiff must prove discrimination with respect to an aspect of the employment relationship not encompassed by the safe harbor provision) applies to the ADA just as well as it did to the ADEA.

9

meaning to be given effect.[4]  See Modderno, 82 F.3d at 1065; Leonard F., 199 F.3d at 104; Krauel, 95 F.3d 679.

The D.C. Circuit has followed the Betts template in deciding that the ADA's subterfuge clause (i) requires the plaintiff to demonstrate that the defendant had a specific intent to discriminate and (ii) does not require the defendant to provide an actuarial justification for disability-based distinctions in benefits plans.[5]  See Aramark Corp., 208 F.3d at 272; Modderno, 82 F.3d at 1063-65.

The Eighth Circuit also adopted the rationale of the Supreme Court in Betts and the D.C. Circuit in Modderno.  In Krauel, after reviewing Modderno's holdings regarding the meaning of the subterfuge clause, the court announced that it would "adopt them as [its] own."  Krauel, 95 F.3d at 679.  The Krauel court then upheld the dismissal of the plaintiff's § 501 claim, reasoning

---

[4] The ADA's subterfuge clause differs slightly from the one at issue in Betts in that the ADA's clause states that the safe harbor provision itself cannot be used as a subterfuge, 42 U.S.C. § 12201(c), while the clause at issue in Betts prohibited a plan from being used as a subterfuge, 492 U.S. at 165.  But as the D.C. Circuit has explained, this semantic difference is "too thin [of] a reed" to establish that Congress intended something other than the Betts interpretation to apply to the ADA's subterfuge clause.  Aramark Corp., 208 F.3d at 272.

[5] In both Aramark, an ADA case, and Modderno, a Rehabilitation Act case, the court rested its decisions on the fact that the employer/plan provider could not have had a specific intent to evade the law, because the plans were created prior to the enactment of the relevant laws.  Aramark Corp., 208 F.3d at 269-270; Modderno, 82 F.3d at 1064.  Given that this Circuit has reasoned that Congress intended for the ADA's subterfuge clause to be interpreted just as the Betts Court interpreted the ADEA's erstwhile subterfuge clause, Modderno, 82 F.3d at 1065, there is no reason to believe that it would deviate from Betts with respect to the "evade the purposes" portion of the clause.

that the claim could not stand because plaintiff had conceded that she had not suffered any employment discrimination outside of the context of a safe harbor protected benefit plan.  Id.; see also Piquard v. City of East Peoria, 887 F. Supp. 1106, 1122-1125 (C.D. Ill. 1995) (applying Betts framework to the "evade the purposes" language of the ADA's subterfuge clause); Minch v. City of Chicago, 363 F.3d 615, 627 (7th Cir. 2004) (explaining why the Betts definition of subterfuge applies to a subterfuge clause in the ADEA different from the one at issue in Betts).

Based on Betts and its progeny, the Court should dismiss plaintiff's claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  In this Circuit, dismissal for failure to state a claim is appropriate if "the court finds that the plaintiff[] ha[s] failed to allege all the material elements of [his] cause of action."  Weyrich, 235 F.3d at 623 (citations and quotations omitted, brackets in the original).  See also Razzoli v. Federal Bureau of Prisons, 230 F.3d 371, 374 (D.C. Cir. 2000); Ripple v. United States, 2006 WL 2024966, * 1 (D.D.C. July 17, 2006).  Plaintiff has failed to allege one of the material elements of his cause of action, namely, that the long term care insurance plan falls outside of the scope of the safe harbor provision because it effects discrimination with respect to an aspect of plaintiff's employment relationship that is not shielded by the safe harbor clause (i.e., with respect to something other than the provision of fringe benefits offered by a plan shielded by § 12201(c)(3)).[6]  See above pp. 7-11.

---

[6] Section 12201(c) applies to both Title I and Title III of the ADA.  As this case implicates only Title I, the United States takes no position on the interpretation of § 12201(c) as applied to Title III.

   The D.C. Circuit has concluded that plaintiffs bear the burden of pleading facts which establish the existence of a subterfuge and face dismissal if they do not satisfy that burden.  In Aramark, the D.C. Circuit rejected a plaintiff's discrimination claim under the ADA because, in part, the plaintiff had not "allege[d]" that the defendant acted with "the purpose of circumventing the ADA, i.e., that the [plan] amendments were a subterfuge (its burden under Betts)."  208 F.3d at 273.  See also Betts, 492 U.S. at 181 ("[T]he employee bears the burden of proving that the discriminatory plan provision actually was intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation.").

   Plaintiff has not alleged discrimination with respect to an aspect of his employment relationship which falls outside the scope of the safe harbor provision.  See Compl.  For example, he does not contend that Partners declined to cover him to drive down his wages because he is disabled.  See, e.g., Betts, 492 U.S. at 180.  Indeed, the word "subterfuge" does not even appear in the complaint, see Compl., which specifies no alleged discrimination other than Partner's decision to decline to offer plaintiff full long term care insurance coverage.  See, e.g., id. ¶ 44.  The law requires plaintiff to allege discrimination with respect to an aspect of his employment relationship not encompassed by the safe harbor provision, and he has not done so.  As plaintiff has failed to make any such allegation, he has failed to state a claim with respect to the propriety of OPM's contract with Partners.  Accordingly, defendant is entitled to judgment as a matter of law.  See Gunson v. James, 364 F.Supp. 2d 455, 461-465 (D.N.J. 2005) (dismissing, at the summary judgment stage, a Rehabilitation Act challenge to the federal government's long term care insurance plan).

## II.    <u>Binding Circuit Precedent Forecloses Plaintiff's § 504 Claim</u>

Plaintiff's § 504 claim should be dismissed for a second reason.   Mr. Rouse works for the federal government, Complaint ¶ 6, and the § 504 claim in his complaint alleges employment discrimination, <u>see, e.g.</u>, Compl. ¶ 39 ("OPM discriminated against Mr. Rouse when it denied him a benefit of employment based upon his membership in a protected classification.").  The D.C. Circuit held in <u>Taylor v. Small</u>, 350 F.3d 1286, 1291 (D.C. Cir. 2003), however, that federal employees cannot bring employment discrimination claims under § 504.  Relying on the text of § 504 (<u>i.e.</u>, that the section does not, on its face, apply to federal employees) and the statutory framework of the Rehabilitation Act (<u>i.e.</u>, that "it is highly unlikely" that Congress addressed employment discrimination in § 504 after having addressed the matter a few sections earlier in § 501), the court concluded that "it is unreasonable to interpret § 504's prohibition of 'discrimination under any program or activity conducted by an Executive agency' as a prohibition of discrimination in employment by the Government."  <u>Id.</u>  The court went on expressly to "hold, therefore, in conformity with the majority of courts to have addressed the issue, that § 504 does not provide federal employees an 'alternative route for relief under the Rehabilitation Act.'"  <u>Id.</u> (citation omitted).  Thus, the Court should dismiss plaintiff's claim pursuant to <u>Taylor</u>, 350 F.3d at 1291.

13

## CONCLUSION

For the foregoing reasons, the Court should dismiss plaintiff's claims for failure to state a

claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).


Dated: March 16, 2007                          Respectfully submitted,

                                               PETER D. KEISLER
                                               Assistant Attorney General

                                               JEFFREY A. TAYLOR
                                               United States Attorney

                                               JOSEPH W. LOBUE
                                               Assistant Director,
                                               Federal Programs Branch

                                               s/ Justin M. Sandberg
                                               JUSTIN M. SANDBERG
                                               (Ill. Bar. No. 6278377)
                                               Trial Attorney, Federal Programs Branch
                                               Civil Division
                                               U.S. Department of Justice
                                               P.O. Box 883
                                               Washington, D.C. 20044
                                               (202) 514-3489 (telephone)
                                               (202) 616-8202 (facsimile)

                                               Counsel for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| RALPH D. ROUSE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-2088 (RWR) |
| ) | |
| LINDA M. SPRINGER, Director, U.S. Office ) | |
| of Personnel Management, ) | |
| ) | |
| Defendant. ) | |

## <u>ORDER</u>

Upon consideration of defendant's motion to dismiss, and plaintiff's opposition thereto, it is hereby

ORDERED that defendant's motion to dismiss is granted, and it is

FURTHER ORDERED that this action be, and hereby is, dismissed.


Dated: _____                    _____
                                            RICHARD W. ROBERTS
                                            United States District Judge