**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
RALPH D. ROUSE, JR.,                      )
                                          )
          Plaintiff,                      )
                                          )
          v.                              )     Case No.:  1:06-CV-02088-RWR
                                          )
LINDA M. SPRINGER, DIRECTOR               )
U.S. OFFICE OF PERSONNEL MANAGEMENT,      )
                                          )
          Defendant.                      )
_____)

**MOTION TO INTERVENE**

Long Term Care Partners LLC ("LTC Partners") respectfully moves to intervene in this

proceeding pursuant to Fed. R. Civ. P. 24(a)(2).  Alternatively, LTC Partners seeks permissive

intervention under Rule 24(b).

Plaintiff alleges that the Office of Personnel Management ("OPM") violated sections 501

and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794, by contracting with LTC Partners, an

entity that he says denies long term care insurance to individuals who use wheelchairs; and that

LTC Partners' decision to deny Plaintiff such insurance was discriminatory.  Despite allegations

that directly implicate LTC Partners, Plaintiff did not join LTC Partners as a defendant in this

matter.  LTC Partners is a party to the contract being challenged in this case, was the decision

maker in denying Plaintiff long term care insurance, and is the only entity (through its parents)

with a financial stake in the provision of coverage, which Plaintiff retroactively requests in this

case.  As such, LTC Partners seeks to intervene as of right in order to protect its significant

interests in this matter.  Alternatively, LTC Partners seeks permissive intervention in this action.

The bases for this motion are more fully set forth in the accompanying memorandum.

Counsel for LTC Partners has contacted counsel for the parties concerning their position on LTC Partners' motion to intervene.  Defendant OPM has no objection to LTC Partners' motion to intervene.  Plaintiff, however, opposes LTC Partners' motion, but reserves his right to withdraw his opposition upon review of the government's response to his complaint.

WHEREFORE, for the reasons stated in the accompanying memorandum, the Court should grant LTC Partners' Motion to Intervene.

Respectfully submitted,

/s/
_____
Anthony F. Shelley, D.C. Bar # 420043
Yvonne M. Williams, D.C. Bar # 462513
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005
Tel:  (202) 626-5800
Fax:  (202) 628-0858

*Counsel for Long Term Care Partners, LLC*

DATED: April 9, 2007

748170.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
RALPH D. ROUSE, JR.,                      )
                                          )
                Plaintiff,                )
                                          )
        v.                                )        Case No.:  1:06-CV-02088-RWR
                                          )
LINDA M. SPRINGER, DIRECTOR               )
U.S. OFFICE OF PERSONNEL MANAGEMENT,      )
                                          )
                Defendant.                )
_____ )

**MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE**

Long Term Care Partners, LLC ("LTC Partners") respectfully submits this memorandum

in support of its motion for leave to intervene in this proceeding.

**<u>INTRODUCTION</u>**

LTC Partners is a consortium formed by John Hancock Insurance Company ("John

Hancock") and Metropolitan Life Insurance Company ("MetLife").  John Hancock and MetLife

created LTC Partners to administer the Federal Long Term Care Insurance Program ("FLTCIP"

or "the Program"), a program established pursuant to the Long Term Care Security Act

("LTCSA"), 5 U.S.C. § 9001 *et seq*., to provide long term care insurance to federal employees

and certain others.  Affidavit of Peggy Murray ("Murray Aff."), Exh. 1, ¶ 2.  LTC Partners

contracts with the U.S. Office of Personnel Management ("OPM"), the named defendant in this

action, to provide insurance under the Program, and LTC Partners' functions include the

marketing of the Program to those who are eligible to apply, determining the insurability of

applicants, issuing certificates of coverage, billing and receiving premium payments, and making

claim determinations for those insured under the Program.  Murray Aff. ¶ 2.

Plaintiff applied for insurance under the FLTCIP. LTC Partners declined his application for enrollment on the grounds that he uses a wheelchair and therefore, on the face of the application, was ineligible for the Program (due to unreasonable insurance risk). Plaintiff then brought this lawsuit alleging, as stated in the recent Amended Complaint, that OPM violated sections 501 and 504 of the Rehabilitation Act, 29 U.S.C. §§ 791, 794, by "contract[ing] with LTC Partners, or otherwise suffer[ing] Long Term Care Partners['] decision to refuse Mr. Rouse -- and others with disabilities -- a benefit of employment based on his -- and their -- disabilities." Am. Compl. ¶ 40. He also alleges that, as a result of the decision to deny him long term care insurance, OPM unlawfully "discriminated against [him] . . . based upon his membership in a protected classification." *Id.* ¶ 51. For relief, Plaintiff requests that the Court order the approval of his application for enrollment in the FLTCIP, that the Court declare OPM to have violated the Rehabilitation Act by contracting with "with an entity or entities that refuse to provide LTC insurance to individuals in wheelchairs," and that the Court order OPM to "redesign" the Program application (which allows on its face for denial of eligibility to wheelchair users) that is incorporated into the OPM-LTC Partners contract. *Id.* at 11-12.

LTC Partners now moves to intervene as of right under Fed. R. Civ. P. 24(a)(2). LTC Partners meets the test for intervention as of right, most notably because it has significant interests relating to the subject of the action and will be unable to protect those interests if not granted the right to intervene. First of all, LTC Partners has a significant interest in the contract that Plaintiff seeks here to invalidate as discriminatory, for it is a party to that very contract. Absent LTC Partners' intervention, it cannot protect its own contract from potential invalidation in this case. In addition, LTC Partners has a financial interest in this matter because, as part of the relief he seeks, Plaintiff requests participation (even retroactively) in the FLTCIP, and the

2

parents of LTC Partners underwrite coverage for all enrollees.  If LTC Partners cannot intervene, it will be unable to protect itself from a ruling that may require it to underwrite coverage for Plaintiff.

Alternatively, LTC Partners seeks permissive intervention under Rule 24(b).  That test, which centers upon whether the would-be intervenor's claim or defense has a legal or factual question in common with the main action, is likewise satisfied in these circumstances.  In another forum, Plaintiff has leveled the very same allegations against LTC Partners that it pursues here against OPM's Director, and Plaintiff possibly could press the same allegations as are asserted against OPM in a subsequent action against LTC Partners.  Indeed, the claim proffered against OPM here is really also against LTC Partners (despite Plaintiff's failure to name LTC Partners), given that Plaintiff challenges LTC Partners' actions in denying eligibility under the FLTCIP to him and seeks to declare illegal a contract to which LTC Partners is a party. LTC Partners' defense to Plaintiff's former and current and any future allegations against LTC Partners inevitably has factual and legal questions in common with OPM's defense, thereby warranting permissive intervention.

## **BACKGROUND**

### A.    **Statutory, Regulatory, and Contractual Background**

Congress enacted the LTCSA in 2000 to provide long term care insurance benefits for federal employees, annuitants, and their families.  *See* 5 U.S.C. § 9001(1)-(6).  It authorized OPM to enter into contracts with "qualified carriers" to provide long term care insurance.  *Id.* § 9003(a).  Pursuant to the LTCSA, OPM has entered a contract – referred to in the statute as a "master contract" – with LTC Partners.  *See id.* § 9001(1)-(6).  The master contract consists of OPM's request for proposal, LTC Partners' proposal, LTC Partners' best and final offer, and

748372.1

additional negotiated documents.  Murray Aff. ¶ 3, Exh. 1A- D.  LTC Partners is the only

qualified carrier under the Program; no other entity provides long term care insurance under the

LTCSA to federal employees, annuitants and their qualified relatives.  *Id.* ¶ 4.

Although OPM has authority to enter the necessary contracts, as well as to regulate the

Program and audit carriers, *see* 5 U.S.C. § 9008(b), it does not subsidize the Program.  Instead,

enrollees pay 100 percent of the premiums based on rates established by the master contract.  *Id.*

§ 9004(a); *see also* 5 C.F.R. § 875.301 ("There is no government premium contribution toward

the cost of long term care insurance.").  The FLTCIP rates are derived from actuarial calculations

taking into account the likely enrollment and the risk transferred by the projected pool of

enrollees to John Hancock and MetLife, who are the underwriters of the insurance provided

through the OPM-LTC Partners master contract.  Murray Aff. ¶ 10**.**  If the premium income is

insufficient to cover the costs of administering the Program and paying claims for all benefits,

LTC Partners' parents, John Hancock and MetLife, – like any insurer – must cover the shortfall

from their own funds.  *Id.* ¶ 5.

In addition, the FLTCIP and the master contract delegate to LTC Partners the authority to

determine whether an individual shall qualify for coverage.  5 U.S.C. § 9003(c)(2)**;** Murray Aff.

¶ 6.  Congress acknowledged that "'the costs of issuing policies on a guaranteed basis [would]

increase premiums substantially for all enrollees.'"  *Gunson v. James*, 364 F. Supp. 2d 455, 458

(D.N.J. 2005) (quoting H.R. Rep. No. 106-610(I) (2002)).  The LTCSA therefore provides that:

"Nothing in this chapter shall be considered to require that long term care insurance be

guaranteed to an eligible individual."  5 U.S.C. § 9002(e)(3).  The decision to provide coverage,

also known as the "insurability decision," is guided by application guidelines and minimal

underwriting criteria set forth in the LTCSA. *Id.* § 9002(e). The LTCSA delegates the establishment of further underwriting criteria to the qualified carriers and OPM. *Id.*

OPM is not involved in the insurability decision. *See id.* § 9003(c)(2); 5 C.F.R. § 875.407; Murray Aff. ¶ 6. The regulations promulgated pursuant to the LTCSA, *see* 5 U.S.C. § 9008(a), state that OPM's role in the administration of the FLTCIP is limited to (a) "reviewing and approving the content and format of materials associated with the FLTCIP pursuant to section 9008(d) of Title 5, United States Code;" (b) "reviewing and approving rates, forms, and marketing materials;" and (c) "determining the qualifications of the enrollment personnel and the Program administrator(s)." 5 C.F.R. § 875.107.

To obtain coverage, there are two types of applications for prospective enrollees, both of which inquire, to a greater or lesser extent, about the individual's health status and history. First, "abbreviated underwriting" refers to "a type of underwriting that asks fewer questions about [an individual's] health status than with full underwriting to enable [LTC Partners] to determine whether [an individual's] application for coverage will be approved." 5 C.F.R. § 875.101. Second, the term "full underwriting" refers to a "more comprehensive type of underwriting under [the program], which requires [individuals] to answer many questions about [their] health status to enable [LTC Partners] to determine whether [the] application for coverage will be approved." *Id.* LTC Partners makes its insurability decision based on, among other considerations, the responses to the questions concerning health status in the respective applications. Murray Aff. ¶ 6.

The insurability decision is "subject to review only to the extent and in the manner provided in the applicable master contract." 5 U.S.C. § 9003(c)(2). The master contract provides an extensive appeals process within LTC Partners (or its parents) for denied

applications.  *See* Murray Aff. ¶ 7, Exh. 1B, Technical Proposal at 64-5.  Under the master

contract, no other avenues exist for appeal of a decision by LTC partners to decline coverage.

*See* 5 C.F.R. § 875.104.  LTC Partners' insurability decision, therefore, may not be appealed to

OPM.  5 C.F.R. § 875.407.

After exhaustion of the master contract's grievance procedures, the only other available

remedy is judicial review.  Under the LTCSA,

> [the] district courts of the United States have original jurisdiction of a civil
> action or claim described in paragraph . . . (2) of section 9003(c) [*i.e.*, the
> section stating that insurability determinations can be challenged only
> consistent  with the master contract], after such administrative remedies as
> required under such paragraph . . . (2) (as applicable) have been exhausted,
> but only to the extent judicial review is not precluded by any dispute
> resolution or other remedy under this chapter."

5 U.S.C. § 9007.  In light of that statutory provision, OPM's regulations provide for judicial

review of denials of insurability in a "legal action against the Carrier in an appropriate United

States district court."  5 C.F.R. § 875.104(e).  The regulations state specifically that the

aggrieved "may not sue OPM, the independent reviewer, or any other entity."  *Id.*

**B.    Plaintiff's Amended Complaint and the Earlier Administrative Litigation**

Plaintiff brought this action in December 2006, after LTC Partners denied his application

for enrollment in the FLTCIP.  Plaintiff has paraplegia and uses a wheelchair.  Am. Compl.

¶¶ 11-12.  The Program application, on its face, has a question seeking information about

wheelchair use and states on its face that a "yes" answer to that question results in automatic

denial of certain of the insurance options offered under the FLTCIP.  *Id.* ¶¶ 16-17.  Plaintiff

answered "yes," and LTC Partners therefore made a negative insurability determination.  *Id.*

¶ 17.

In the lawsuit, Plaintiff alleges that OPM violated the Rehabilitation Act and the Americans with Disabilities Act by contracting with LTC Partners, an entity that he says denies long term care insurance to individuals who use wheelchairs (*id.* ¶¶ 40-41); and he further alleges that OPM discriminated against him when it (even though LTC Partners made the insurability determination) denied him "a benefit of employment based upon his membership in a protected classification." *Id.* ¶ 51.  While OPM is the sole named Defendant in this action, Plaintiff mentions LTC Partners no less than eight times in his Amended Complaint.

As redress for his claims in this action, Plaintiff requests that the Court enter a declaratory judgment that (1) OPM discriminated against plaintiff on the basis of disability; (2) that OPM's policy to not provide long term care insurance to individuals who use wheelchairs violates the Rehabilitation Act; and (3) that OPM's contracting with an entity (LTC Partners) that does not provide long term care insurance to individuals in wheelchairs allegedly violates the Rehabilitation Act.  In addition to seeking a declaratory judgment, Plaintiff asks the Court to permanently enjoin OPM from contracting with an entity that does not provide long term care insurance to individuals who use wheelchairs, to order OPM to enroll Plaintiff in the FLTCIP retroactive to the date of his application, to order the redesigning of "Question 5" of the FLTCIP application so that "it does not include any discriminatory references to 'wheelchair,' 'motorized scooter,' 'walker,' and 'stairlift.'"  *See* Am. Compl. at 12.  Plaintiff also seeks punitive damages and legal costs and fees.  *Id.*

Plaintiff originally filed a complaint against OPM at the Equal Employment Opportunity Commission ("EEOC") making the same accusation -- *i.e.*, that the decision to deny Plaintiff long term care insurance because he used a wheelchair was discriminatory.  *See* EEOC No. 100-2005-00025X, Agency Case No.: FDICEO 04-0014.  In that action, Plaintiff indicated that those

748372.1

"responsible for this alleged discriminatory action" were the "Office of Personnel Management (OPM) who offers the program" and "the Federal Long Term Care Partners LLC (MetLife Insurance and John Hancock Insurance) who are the contractors who administered the program for OPM."  Affidavit of Ralph Rouse ("Rouse Affidavit"), Exh. 2, at 3.  In the EEOC matter, Plaintiff sought as a remedy, like he seeks in this matter, long term care insurance coverage and the exclusion of "discriminatory references" to "wheelchair" in the application for coverage.  *See* June 18, 2004 Letter to Kay Coles James, Exh. 3, at 4.  The U.S. District Court for the District of Maryland, entered a preliminary injunction requiring that the EEOC permit LTC Partners to intervene in that proceeding.  *See Long Term Care Partners, LLC v. United States*, Civil No. JFM-06-475 (D. Md. Jun. 23, 2006), Exh. 4.  Plaintiff abandoned the administrative action in favor of this Court case in November 2006.

## ARGUMENT

LTC Partners moves to intervene as a matter of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Alternatively, if the court finds intervention of right inappropriate, LTC Partners seeks permissive intervention under Rule 24(b).

## I.    LTC PARTNERS IS ENTITLED TO INTERVENTION OF RIGHT

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, LTC Partners is entitled to intervene as a matter of right in this proceeding.  Rule 24(a)(2) provides, in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action: . . .(2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

"An applicant for intervention as of right must demonstrate: (1) the timeliness of the motion; (2) a cognizable interest in the action; (3) impairment of the interest; and (4) the lack of adequate

8

representation in the lawsuit." *Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991); *see also Williams & Humbert Ltd. v. W. & H. Trade Marks Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). LTC Partners certainly meets these requirements and should be granted intervention as of right.

### A.    LTC Partners' Motion is Timely

LTC Partners' motion to intervene clearly is timely. Plaintiff filed his complaint in this action on December 8, 2006. The defendant was not served until January 11, 2007. And Plaintiff then filed an amended complaint on March 30, 2007. No substantive proceedings have occurred in this matter. To LTC Partners' knowledge no discovery or even a scheduling conference has yet taken place. As such, LTC Partners has timely filed this motion. *See Admiral Ins. Co.*, 137 F.R.D. at 177 (finding intervention motion timely where major substantive issues had not yet been argued or resolved at the time motion was filed).

### B.    LTC Partners Has Interests that May Be Substantially Impaired by the Disposition of this Case

LTC Partners has two significant interests at stake in this case: contractual and financial interests. Each of these interests will be substantially impaired if this matter is resolved without LTC Partners' participation.

### 1.    LTC Partners' Interest in the Legality of Its Contract May Be Impaired

Although this dispute challenges the legality of the contract between OPM and LTC Partners and involves the validity of an adverse insurability decision made under the terms of that contract, Plaintiff has named only OPM as a defendant. LTC Partners, however, is a party to the contract, and, pursuant to the contract and the LTCSA, made the insurability decision that triggered this dispute. If Plaintiff is awarded the relief he has sought, the underwriting principles

of the contract will be voided.  LTC Partners clearly has an interest in the validity of its contract

with OPM and that interest may undoubtedly be impaired if this case is litigated without LTC

Partners' participation.

LTC Partners' interests in the validity of the terms of its contract are *per se* sufficient to

warrant intervention.  Courts have held that intervention is appropriate when a party to a contract

that is threatened by a potential result in an action is not initially named as a party to that action.

*See, e.g.*, *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998) (timber

companies' intervention in suit against federal Forest Service warranted where suit involved

contracts between companies and agency); *EEOC v. Am. Tel. & Tel. Co.*, 506 F.2d 735, 741-42

(3d Cir. 1974) (union permitted to intervene in lawsuit between EEOC and AT&T, where

legality of collectively bargained agreement between union and AT&T was at issue); *Sierra Club

v. Glickman*, 82 F.3d 106, 109 (5th Cir. 1996) (farm bureau's intervention warranted where

Sierra Club alleged contracts between federal government and farm bureau were illegal).

Plaintiff asserts that OPM discriminated against him by contracting with LTC Partners,

which he says denies long term care insurance to individuals, like Plaintiff, who use a

wheelchair.  As a result, his allegations directly affect the terms of the contract to which LTC

Partners is a party.  The contract authorizes, as part of the application process, inquiry

concerning current or prior disabilities or illnesses.  Indeed, Congress expressly rejected an

insurance regime that would permit coverage regardless of health considerations; otherwise, the

cost for all enrollees would be prohibitive, thus defeating the purpose of the LTCSA – namely, to

make long term care insurance available to the largest number possible of federal employees,

annuitants, and their qualified relatives.  *See* H.R. Rep. No. 106-610(I), at 11 (2000).  By

disputing OPM's decision to contract with LTC Partners because it denied him insurance

coverage based on disability as well as the insurability decision itself, Plaintiff very clearly

challenges the terms of the contract and even the enabling statute, which permit the denial of

applications based on disability.  If Plaintiff were to succeed with his case, thereby meaning that

insurance coverage must be provided to him notwithstanding any disability, the terms of the

contract authorizing LTC Partners to decline applicants in his circumstances would be nullified.

With such an interest that can readily be impaired in this action, LTC Partners has a right to

intervene.[1]

### 2.    LTC Partners Has a Financial Interest

In addition to a contractual interest, LTC Partners also has a financial interest in this

action.  In this regard, Plaintiff seeks acceptance of his application for long term care insurance

coverage under the FLTCIP.  If the court holds that the underwriting decision was discriminatory

and therefore illegal and awards the relief Plaintiff seeks, OPM will be required to enroll

retroactively Plaintiff in the FLTCIP.  This directly affects LTC Partners' financial interests,

because its parents, John Hancock and MetLife, underwrite the Program.  LTC Partners'

financial interest therefore is implicated by the very relief Plaintiff seeks.  An economic interest

need not be large to constitute a legally cognizable interest; an "identifiable trifle" would suffice.

*See, e.g., Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.,* 204 F.3d 149, 156 (4th

Cir. 2000).

In fact, in this case, the economic consequences to LTC Partners potentially may extend

even beyond insuring Plaintiff.  Requiring the enrollment of those whose risk factors fall outside

the FLTCIP parameters undermines the pricing assumptions for the entire Program.  Under the

---

[1] It should also be noted that, under the LTCSA and OPM's regulations, the only proper defendant in an action to challenge an insurability determination is the carrier, here LTC Partners.  Nonetheless, though this case derives from an insurability denial, Plaintiff has not named LTC Partners.  By statute and regulation, LTC Partners is a proper defendant, and therefore Congress and OPM can be understood to have signaled that intervention should exist.

748372.1

Program, LTC Partners provides insurance in exchange for the enrollees' premium payments; the United States government does not subsidize the Program. 5 U.S.C. § 9004(a); 5 C.F.R. § 875.301. Unlike personal insurance, premium rates for the FLTCIP are set for the *group*; there are no individual rates. Murray Aff. ¶ 10, Exh. 1B, Cost Proposal, Tab II. The pricing for the FLTCIP, as for other groups, assumes a mixture of enrollees along what may be thought of as a health spectrum. Murray Aff. ¶ 10. In order for group coverage to be a worthwhile purchase for all, including the healthy applicants, pricing must be competitive with individual policies available in the marketplace. *Id.* If the Court ruled in Plaintiff's favor and thereby required Plaintiff's enrollment in the Program, such a ruling could set a precedent for adding those in a risk class not contemplated in setting the rates. *See* Murray Aff. ¶ 11. LTC Partners would then have to provide benefits at its own risk. That is a significant risk, given that Plaintiff's application was declined due to a disability, making it likely that he will file claims for benefits. Because Plaintiff's case threatens to expand LTC Partners' insurance obligations, LTC Partners has a financial interest in the suit.

Stated differently, if Plaintiff succeeds, LTC Partners may have to provide insurance not just to Plaintiff, but also to similarly situated individuals with otherwise disqualifying disabilities or health conditions. Indeed, Plaintiff's request that the "court order OPM to redesign Question 5 of Part B of the FLTCIP application form so that it does not include any discriminatory references to 'wheelchair,' 'motorized scooter,' 'walker,' and 'stair lift,'" plainly contemplates such an expansion of the Program. *See* Am. Compl. at 12. And Plaintiff alleges that OPM acted illegally when it "suffered Long Term Care Partners['] decision to refuse Mr. Rouse -- *and others with disabilities* -- a benefit of employment based on his -- *and their* -- disabilities." Am. Compl. ¶ 40 (emphasis added). A significant segment of the population that has not previously

748372.1

been eligible for FLTCIP coverage may, as a result, qualify for such coverage. Again, the pricing assumptions, upon which rates and reserves have been established, did not contemplate such individuals. *See* Murray Aff. ¶ 5, 11. The result is that the risk of loss would now potentially far outweigh the premium income, and the funds of LTC Partners' parents will be at risk for the shortfall. *Id.* ¶ 5.

## C.    OPM Cannot Adequately Represent LTC Partners' Interests

LTC Partners' interests cannot be adequately represented by OPM. The burden of showing inadequate representation is not onerous. *See Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972); *see also Fund for Animals*, 322 F.3d at 735. LTC Partners can meet this minimal burden of showing inadequate representation.

Because OPM is a government entity, it can not adequately represent LTC Partners' private and financial interests. The courts have held repeatedly that the government cannot adequately represent a private party's interests. *E.g.*, *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("the government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation"); *Dimond*, 792 F.2d at 193 ("Since State Farm's [private] interest cannot be subsumed within the shared interest of the citizens of the District of Columbia, no presumption exists that the District will adequately represent its interests."); *Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir. 1977) ("We have here also the familiar situation in which the governmental agency is seeking to protect not only

the interest of the public but also the private interest of the petitioners in intervention, a task

which is on its face impossible."); *Cabot LNG Corp. v. P.R. Elec. Power Auth.*, 162 F.R.D. 427,

431 (D.P.R. 1995) (Defendant "is a government agency and therefore, cannot adequately

represent private interests in litigation"); *see also In re Sierra Club*, 945 F.2d 776, 780 (4th Cir.

1991) (noting the divergent interests of public and private entities); *Mille Lacs Band of*

*Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000 (8th Cir. 1993) (same).

The D.C. Circuit's decision in *Dimond* is illustrative. There, several automobile

insurance carriers sought to intervene under FRCP 24(a) in litigation involving the District of

Columbia's No-Fault Insurance Act which, among other things, required auto insurance

companies to pay its insured accident victims rather than recover from the insurance company of

the person "at fault." Even though only the insurance companies were financially liable for the

Act's implementation, the lower court denied the motion to intervene, holding that the

companies' interests were adequately represented by the District of Columbia. The D.C. Circuit

reversed and concluded that, with the District having no financial stake in the litigation, the

insurance companies' "application for intervention thus falls squarely within the relatively large

class of cases in this circuit recognizing the inadequacy of governmental representation of the

interests of private parties in certain circumstances." 792 F.2d at 192. The court noted:

> A government entity such as the District of Columbia is charged
> by law with representing the public interest of its citizens. State
> Farm, on the other hand, is seeking to protect a more narrow and
> 'parochial' financial interest not shared by the citizens of the
> District of Columbia. *The District would be shirking its duty were*
> *it to advance this narrower interest at the expense of its*
> *representation of the general public.*

*Id.* at 192-93 (emphasis added); *accord Utah Ass'n of Counties*, 255 F.3d at 1256; *Mille Lacs*

*Band of Chippewa Indians*, 989 F.2d at 1000-01.

14

Like the intervenors in *Dimond*, LTC Partners should be permitted to intervene in this matter.  OPM has an obligation to represent the public interest in the program created under the LTCSA and the interests of all federal government employees covered (or even not covered) under the Program.  On the other hand, LTC Partners seeks to protect narrower, parochial interests -- most notably, its contractual and financial interests.  Because LTC Partners alone underwrites the program, only it (not the United States) may have financial exposure in the event an insurability determination is reversed and coverage is ordered.  OPM's interest is in upholding the legality of the program and contract, which is no different than the District's interest in defending the legality of the statute at issue in *Dimond*.  That public interest was not enough in *Dimond* to permit the denial of intervention to a private party with a financial interest; it should not be enough here either.

Moreover, even if the government could generally represent a private party's interests, and further still if OPM's interests here were currently in line with LTC Partners', there is nothing to indicate that OPM would continue to represent those interests.  Indeed, it is "not realistic" to assume that an agency's position will "remain static or unaffected by unanticipated policy shifts."  *Utah Ass'n of Counties*, 255 F.3d at 1256 (internal quotation marks omitted).

And finally, if the case is disposed of by settlement or accord rather than by litigation, what OPM "perceives as being in its interest may diverge substantially from" LTC Partners' interest.  *Mille Lacs Band of Chippewa Indians*, 989 F.2d at 1001.  OPM, at any point, could agree to changes in the LTCSA program in order to avoid further conflict with Plaintiff including requiring Plaintiff's enrollment in the Program.  LTC Partners' position would be diametrically different.  *See Utah Ass'n of Counties*, 255 F.3d at 1254 (accepting argument of would-be intervenor that "an intervenor need only show the possibility of inadequate representation").

748372.1

## II.     AT THE VERY LEAST, LTC PARTNERS SHOULD BE GRANTED PERMISSIVE INTERVENTION

Should the Court find intervention under Rule 24(a)(2) inappropriate, LTC Partners

should be granted permissive intervention under Rule 24(b)(2).  Rule 24(b)(2) provides:

> Upon timely application anyone may be permitted to intervene in
> an action . . . when an applicant's claim or defense and the main
> action have a question of law or fact in common. . . . In exercising
> its discretion the court shall consider whether the intervention will
> unduly delay or prejudice the adjudication of the rights of the
> original parties.

Permissive intervention is dependent upon "(1) an independent ground for subject matter

jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in

common with the main action." *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 68

(D.D.C. 2006).  The court must also determine whether the requested intervention will unduly

delay or prejudice the adjudication of the rights of the existing parties.

LTC Partners meets the requirements for permissive intervention.  First, just as federal

question jurisdiction under 28 U.S.C. § 1331 exists over OPM to challenge a contract allegedly

violative of federal anti-discrimination laws, it exists over the other party to that same contract,

LTC Partners.  Moreover, the LTCSA, 5 U.S.C. § 9007, expressly provides federal jurisdiction

over actions against LTC Partners that challenge the legality of an insurability denial.

Second, as already noted, LTC Partners' motion to intervene is timely filed.  *See supra* at

9.

Third, LTC Partners has defenses with questions of law and fact in common with the

main action.  Specifically, Plaintiff's lawsuit alleges that the OPM-LTC Partners contract is

discriminatory and that LTC Partners' decision to deny him long term care insurance was

likewise discriminatory.  Importantly, in the administrative proceedings at the EEOC that

preceded this case, Plaintiff leveled the same allegations at LTC Partners as it presses in this matter against OPM.  *See supra* at 7-8.  LTC Partners, just as OPM, denies all of Plaintiff's allegations; it can be expected that LTC Partners' defense would have at its core the same factual and legal assertions, since both maintain that no discrimination occurred.  Such defenses would focus on Plaintiff's inability to prove any form of intentional discrimination, that the FLTCIP cannot in any manner be viewed as a "subterfuge" to evade the purposes of the Rehabilitation Act (*see* Am. Compl. ¶ 53), and that the insurability denial followed the LTCSA's underwriting requirements.

Moreover, if the Court were to resolve this action in OPM's favor, LTC Partners should enjoy the benefit of such a decision based on the principles of res judicata.  Were LTC Partners not included in this matter, and were the Court to hold in favor of OPM, Plaintiff might then seek to sue LTC Partners making the exact same allegations of discrimination, allegations that would have already been considered and dismissed by this Court.  Every party who has an interest in this litigation therefore should be before this Court.  LTC Partners' interest is significant:  it is the Program administrator, the sole decision-maker regarding Plaintiff's insurance coverage denial, and potentially the only entity (through its parents) with any financial or economic interest in the outcome of the case if coverage is awarded.  Such significant interests should alone warrant LTC Partners' permissive inclusion in this matter.  *See Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765 (D.C. Cir. 1955) (noting would-be intervenor's significant economic interest in holding that district court abused its discretion in denying permissive intervention).

Finally, LTC Partners' intervention will not unduly delay or prejudice the adjudication of the rights of Plaintiff and OPM; its participation would, in fact, assist the Court in its resolution

748372.1

of this matter.  As stated above, LTC Partners' motion has been submitted prior to any substantive issues being resolved in this action.  LTC Partners' participation will not expand the issues presented.  The issues will remain the same, focusing on Plaintiff's assertion that the OPM-LTC Partners contract and LTC Partners' insurability decision violate federal anti-discrimination laws.  The only difference will be that all parties with an interest in the action will now be present, which can only ensure a fuller and fairer proceeding.

More importantly, LTC Partners is the party that has knowledge of the bases for the decision to decline the Plaintiff's application for insurance coverage.  Because the contract leaves exclusively to LTC Partners the decision about insurability, not even OPM has any right to review such decisions.  LTC Partners is the repository for information about Plaintiff's application.  Given that adjudication of the facts and defenses would be hampered without LTC Partners' participation, its presence can only assist in the adjudication of the matter.

## CONCLUSION

The Court should grant LTC Partners' motion to intervene in this matter.

Respectfully submitted,

/s/
_____
Anthony F. Shelley, D.C. Bar # 420043
Yvonne M. Williams, D.C. Bar # 462513
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005
Tel:  (202) 626-5800
Fax:  (202) 628-0858

*Counsel for Long Term Care Partners, LLC*

DATED: April 9, 2007

748372.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of April 2007, I caused a true copy of the foregoing Motion to Intervene, Memorandum in Support of Motion to Intervene, Exhibits 2-4 thereto, and Notice Regarding Bulky Exhibit Attachment to be served via electronic mail and mailed all of the foregoing in addition to Exhibit 1 by first-class, postage pre-paid, to:

> James C. Bailey
> Bailey & Ehrenberg, PPLC
> 1155 Connecticut Avenue, N.W.
> Suite 1100
> Washington, D.C.  20036
> E-mail: jcb@becounsel.com
> **Attorney for Plaintiff**

> Justin M. Sandberg
> U.S. Department of Justice
> 20 Massachusetts Avenue, N.W.
> Washington, D.C. 20530
> E-mail: justin.sandberg@usdoj.gov
> **Attorney for Defendant**

/s/

_____

Anthony F. Shelley

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| RALPH D. ROUSE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  1:06-CV-02088-RWR |
| | ) | |
| LINDA M. SPRINGER, DIRECTOR | ) | |
| U.S. OFFICE OF PERSONNEL MANAGEMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## NOTICE REGARDING BULKY EXHIBIT ATTACHMENT

Exhibit 1, which is an attachment to the Memorandum in Support of Motion to Intervene, is in paper form only and is being maintained in the case file in the Clerk's Office.  These documents will be available for public viewing and copying between the hours of 9:00 a.m. to 4:00 p.m., Monday through Friday.

Respectfully submitted,

/s/
_____
Anthony F. Shelley, D.C. Bar # 420043
Yvonne M. Williams, D.C. Bar # 462513
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W., Suite 900
Washington, D.C.  20005
Tel:  (202) 626-5800
Fax:  (202) 628-0858

DATED: April 9, 2007

# EXHIBIT 2

**AFFIDAVIT**

## City: Dallas

### State: Texas

I, Ralph D. Rouse, Jr. solemnly swear to the truth of the following statement which is in response to questions posed by Vivian Moore, Equal Employment Opportunity (EEO) Investigator, and provide information pertaining to my formal complaint of discrimination, filed against the U.S. Office of Personnel Management on April 8, 2003, (OPM EEO Case #03-20). The following claim has been accepted for investigation:

Q.      Please state your position title, series and grade, organization, and organizational address

A.      Regional Manager, (Supervisory Equal Opportunity Specialist) GS-360-15, with the Office For Civil Rights, U.S. Department of Health and Human Services, 1301 Young Street, Ste 1169, Dallas, TX 75202. .

Q.      Give dates employed by the Federal Government? Give date employed with the DHHS?

A.      June 22, 1975. I have been employed with DHHS for the same period of time.

Q.      Give dates in your current position?

A.      I began the position as Regional Manager November 27, 1994.

Q.      Do you have a Disability? If so, what is your disability?

A.      Yes, ████████████████████    Redacted: personal medical information

Q.      Does your disability affect a major life activity (e.g., caring for one's self,

Page _1_ of _4_ pages                                    Initials: _RDR_

Exhibit  5

Page  1  of  5

performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, or other)? If so, discuss that activity and how it is affected.

A.    Yes, walking. I use a wheelchair for mobility.

Q.    What was the on-set of this disability? Have you recovered in whole, or in part? What is the prognosis?

A.    ████████████████████████      ████████
       ████████████████████      Redacted:  personal medical information

Q.    Do you take medication, or use assistive devices for this disability? If so, what? Since when?

A.    I have used a wheelchair, since January 1964.

Q.    Do you have medical evidence to provide for the record to support your statement of disability and limitations? If so, please provide.

A.    Yes. See Exhibit #1, which is attached.

Q.    Did the insurer ask for information regarding your disability?

A.    No.

Q.    Did you identify your disability to them?

A.    Yes. I answered question number 5 of their short form questionnaire, which asked, " Do you currently use any of the following medical devices, aids or treatments? Hospital bed, dialysis, motorized scooter, wheelchair, oxygen, walker, or stair lift." I told them I use a wheelchair.

Q.    What are the essential functions of your job)?

A.    Basically I am manager of regional civil rights of 21 people in the US Department of Health and Human Services. The work involved sedentary desk work and required travel.

Q.    How does your disability affect your performing these functions?

A.    It does not.

Page _2_ of _4_ Pages                    Initials: _____

Exhibit _5_
Page _2_ of _5_

Q.    Can you perform these duties and responsibilities without an accommodation?

A.    Yes.

Q.    Discuss the (issue)?  What happened?  (Who, what, when, how, etc.?)

A.    See my statement, dated June 18, 2004, which is attached as Exhibit #2.

Q.    Explain in detail why you believe you were discriminated against because of your medical impairment

A.    See Exhibit #3, Legal Analysis, dated June 18, 2004.

Q.    Were others treated different?  If so, who?  What is your organizational relationship to him/her/them?  How was he/she/they treated different?

A.    Yes. Other federal employees who use auxiliary devices were denied the federal long term care benefit based solely on using an auxiliary device. They were treated differently than those who do not use assistive devices. A five-pack a day smoker can be grand-fathered in to the long term care program.

Q.    Who is responsible for this alleged discriminatory action, and what was his/her role/involvement?

A.    Office of Personnel Management (OPM) who offers the program. And the Federal Long Term Care Partners LLC (Met Life Insurance and John Hancock Insurance) who are the contractors who administered the program for OPM.

Q.    Who did you first contact to file a  complaint or grievance when you were initially denied the long term care program/plan?

A.    I first contacted the U.S. Department of Health and Human Services Equal Employment Opportunity Office. I was advised that Federal Long Term Care LLC Partners administered the program and that I should contact them to find out where I should file the complaint. I contacted them and they asked me to describe my complaint.

Page 3 of 4 pages                          Initials: _____

Exhibit 5
Page 3 of 5

I verbally outlined the issues in my complaint. They first told me that they had recorded my verbal statement and that would serve as a formal complaint. After a period of time, having heard nothing, I called them back. They told me, after seeking advice from supervisors, that I should contact OPM and file a grievance. I contacted OPM, was assigned a counselor who explained to me how to file a grievance, the counseling process, etc.

Q.    Do you have any documents to provide for the record to support your contentions? If so, please provide copies.

A.    See all attachment submitted.

Q.    What relief are you seeking?

A.    See Relief sought attachment #4.

Q.    Do you have anything to add, which is not covered above, concerning the accepted issue?

A.    Yes, see conclusions Attachment #5, dated June 18, 2004.

I have read the above statement consisting of _4_ pages, and it is true and correct to the best of my knowledge and recollection. I have been given an opportunity to review the statement and make any changes, corrections, additions, or deletions. I have initialed each page and signed the statement below.

Signature of Affiant _____ Date _7/20/04_

Signed before me at (Street and City), _1301 Young St. Dallas_ on this _20_ day of _July_, 2004.

Witness or Notary _____
Investigator

Exhibit  5
Page  4  of  5

# EXHIBIT 3

June 18, 2004

Kay Coles James
Director
United States Office of Personnel Management
1900 E Street, N.W.
Washington, D.C. 20415

Re:   **OPM EEO Case # 03-20: In re: Ralph Rouse**

DRAFT NOT SENT

**Factual Background**

Redacted:  Personal health information,
including details supporting claim of good health.

He received an application to apply for long-term health care benefits under the FLTCIP in 2002.  The application invited him, "[a]s a member of the federal family," to apply for benefits under this highly touted new program.  On July 9, 2002, Mr. Rouse applied for the FLTCIP through Long Term Care Partners, LLC.  Long Term Care Partners, LLC administers the FLTCIP, which is sponsored by OPM and offered by the John Hancock Life Insurance Company and Metropolitan Life Insurance Company.

Exhibit ___10a___
Page ___1___ of ___6___

On August 16, 2002, Mr. Rouse received a letter from Long Term Care Partners, LLC stating that he was denied coverage because he answered "Yes" to Part B, Question five on the short application form. Question five asked, "Do you currently use any of the following medical devices, aids, or treatments?" and included "Wheelchair" among the responses. Mr. Rouse answered "Yes" and circled "Wheelchair" as his response. The application states that "[i]f the answer is 'Yes' to any of questions 4-7, you are not eligible for any of the insurance options under this program shown in Part F of this form."

Mr. Rouse contacted the HHS Office of the Secretary Equal Employment Opportunity office ("OS EEO") on September 27, 2002 to file a formal complaint under the Rehabilitation Act based on the denial, and was advised to file his complaint with OPM. OPM informed him that his verbal complaint via telephone would serve as a formal complaint, and that he could also appeal the decision to Long Term Care Partners, LLC. On October 2, 2002, Mr. Rouse sent a written appeal of the denial of benefits decision to Long Term Care Partners, LLC, and also provided the company with his most recent medical records to demonstrate his excellent health. Despite his excellent health status, he received a letter from the Underwriting Director of Long Term Care Partners, LLC on December 11, 2002 stating that the company would not change the initial underwriting decision based on his answering "Yes" to Question five.

In short, there is no doubt that Mr. Rouse was denied enrollment in the FLTCIP strictly because he uses a wheelchair and checked "Yes" to Question five.

After the final OPM counseling interview was held on March 20, 2003, Mr. Rouse filed a formal complaint with OPM using OPM Form 1580 on April 8, 2003. He received a letter from OPM dated May 19, 2003 acknowledging the receipt of his formal complaint. The letter also stated that the complaint would be completely investigated within 180 calendar days of the April 8, 2003 filing date, if it were accepted. Although he had taken all of the proper steps to appeal the denial of FLTCIP benefits, it was not until May 4, 2004, over one year after filing his formal complaint, that OPM sent a letter to Mr. Rouse stating that, pursuant to 29 C.F.R. § 1614, the office would accept his complaint for processing and conduct an investigation of the complaint. Mr. Rouse has not received any further correspondence from OPM.

Almost two years has passed since Mr. Rouse originally contacted the Department of Health and Human Services to lodge a complaint about the discriminatory denial of his application for long-term care benefits. This delay is unreasonable, especially since the facts are not complicated, and the reason for the denial of his application for long-term care insurance is clear.

**Legal Analysis**

The Rehabilitation Act of 1973 was enacted to empower individuals with disabilities in the employment context and to ensure that the federal government plays a leadership role in promoting the employment of such individuals. According to Section 501 of the

Exhibit 10a
Page 2 of 6

Rehabilitation Act, each executive branch department, agency, and instrumentality is required to have an affirmative action plan, to be updated annually, that "provides sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities." 29 U.S.C. § 791(b). In 1992, the Rehabilitation Act was amended to apply the ADA standards in determining whether Section 501 was violated in complaints alleging employment discrimination. 29 U.S.C. § 791(g).

In addition, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 7(20), shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or...conducted by any Executive agency..." 29 U.S.C. § 794(a). Section 504 was also amended in 1992 to apply the ADA standards in determining whether the section was violated in complaints alleging employment discrimination. 29 U.S.C. § 794(d).

The applicable section of the ADA provides that covered entities shall not discriminate against a qualified individual with a disability on the basis of disability "in regard to...employee compensation...and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). In its regulations implementing the ADA equal employment provisions, the Equal Employment Opportunity Commission ("EEOC") provides that "[i]t is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual with a disability in regard to...[f]ringe benefits available by virtue of employment, whether or not administered by the covered entity." 29 C.F.R. 1630.4(f). The ADA further provides that employers are prohibited from participating in contractual or other arrangements or relationships that discriminate against a qualified applicant or employee with a disability; this includes relationships with an organization providing fringe benefits to such an employee. 42 U.S.C. § 12112(b)(2); 29 C.F.R. 1630.6(b).

Under the Rehabilitation Act and the accompanying regulations, there is no doubt that Mr. Rouse is a qualified individual with a disability, and that OPM is a covered entity. Similarly, it is clear that long-term care insurance is a "term, condition, and privilege" of employment. It is also undisputed that long-term care insurance is a "fringe benefit available by virtue of employment." As the attached letter indicates, Mr. Rouse was denied long-term care benefits because he acknowledged in response to Question five of the application form that he uses a wheelchair. OPM administers the FLTCIP, and was responsible for preparing and reviewing the eligibility criteria, including but not limited to Question five of the application form. The non-federal partners who administer the program are prohibited under the Americans with Disabilities Act from discriminating against a qualified applicant with a disability, such as Mr. Rouse, in the administration of the FLTCIP.

This is a textbook case of disability discrimination against OPM under the Rehabilitation Act, and disability discrimination against Long Term Care Partners, LLC,

3

Exhibit 10a
Page 3 of 6

John Hancock Life Insurance Company and Metropolitan Life Insurance Company under the Americans with Disabilities Act. Question five, as you have framed it, is illegal, and must be stricken as it relates to Mr. Rouse and similarly situated federal employees.

**Relief Sought**

We are requesting two forms of relief for the violations by OPM of Sections 501 and 504 of the Rehabilitation Act and by the insurance companies of the ADA. First, we request that Mr. Rouse's application for long-term care benefits under the FLTCIP be approved, retroactive to the date of his application in July 2002. This means that Mr. Rouse will pay a premium based on his age at the time he applied for the benefit, rather than being penalized by paying the rate for his current age since premiums are based on the age of an individual when their application is received. Second, we request that Question five of Part B of the FLTCIP application form be redesigned so that it does not include any discriminatory references to "wheelchair," "motorized scooter," "walker," and "stair lift."

These forms of relief will remedy the violations and ensure that Mr. Rouse and similarly situated federal employees are able to protect their families and their own futures through enrollment in long-term care insurance. The relief will also ensure that these individuals are treated as equal members of the federal family.

If we are unable to settle this case now and obtain the relief requested, we will seek the full panoply of remedies, including monetary damages, attorneys' fees, and any other relief ordered by the court. We will also seek class certification under Rule 23. However, we would prefer to settle the case without protracted litigation, and would welcome the opportunity to meet with you to discuss a resolution of this case.

**Conclusions**

The implementing regulations of the Rehabilitation Act further require the federal government to be a "model employer" of individuals with disabilities. 29 C.F.R. § 1614.203. Far from being a model employment practice under the ADA, your denial of benefits to Mr. Rouse is illegal and violates Sections 501 and 504 of the Rehabilitation Act and the Americans with Disabilities Act. In causing the summary denial of his application, you have violated Sections 501 and 504. In addition, the insurance companies that administer the FLTCIP have violated the ADA.

Your outreach materials for the FLTCIP make reference to the "federal family" of employees. The relief outlined above will correct the violations and ensure that Mr. Rouse and similarly situated federal employees are treated as truly equal members of the "federal family."

Mr. Rouse has waited far too long in this case. If you have any questions, please feel free to contact Mr. Rouse at

REDACTED

4

Exhibit 10a
Page 4 of 6

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LONG TERM CARE PARTNERS, LLC    *

                 *

       v.                *     Civil No. JFM-06-475

                 *

UNITED STATES OF AMERICA     *

                 *****

ORDER

For the reasons stated on the record on June 22, 2006, it is, this 23rd day of June 2006

ORDERED

1. Defendant's motion to dismiss count I is granted with leave for plaintiff to file an amended complaint on or before July 13, 2006;

2. Defendant's motion to dismiss count II is denied;

3. Plaintiff's motion for preliminary injunction is granted as to count II so as to permit plaintiff to intervene in the related proceeding pending before the EEOC; and

4. Summary judgment is entered in favor of plaintiff *sua sponte* as to count II.

/s/ _____
J. Frederick Motz
United States District Judge