IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ralph D. Rouse, Jr. | : | |
|     Plaintiff, | : | |
| v. | : | Case No. 06-cv-02088-RWR |
| Linda M. Springer, Director U.S. Office of Personnel Management, | : | JURY TRIAL DEMANDED |
| | : | |
| *et al.* | | |
| | : | |
|     Defendants. | | |
| _____ | : | |

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANT LINDA SPRINGER'S MOTION TO DISMISS**

Plaintiff Ralph Rouse ("Rouse" or "Plaintiff") submits his Opposition to Defendant Linda Springer, Director U.S. Office of Personnel Management's ("OPM") Motion to Dismiss the Complaint, as amended. On May 24, 2007, by Minute Order, the Court granted Plaintiff's motion for leave to file a Second Amended Complaint and also ordered that OPM's motion to dismiss the original complaint applied to Rouse's Second Amended Complaint. Therefore, Rouse now files this brief in opposition to OPM's motion to dismiss (the "Motion").

**FACTUAL BACKGROUND**

Rouse is an employee of the U.S. Department of Health and Human Services ("HHS"). (Second Amended Complaint ("SAC") ¶ 6.) He has a long record of public service, having worked for the HHS since 1975. (SAC ¶ 7.) He has been Manager of HHS's Region VI Office for Civil Rights since November 27, 1994. (*Id.*) As a result of an accident in 1963, Plaintiff has paraplegia and therefore is a member of a protected

1

classification – he has a qualified disability. (SAC ¶ 11.) Due to his disability, Plaintiff uses a push wheel chair to assist with walking, but his disability does not interfere with his ability to perform the essential functions of his job. (SAC ¶ 12.)

In 2002, Rouse received an application for long-term care insurance benefits, which invited him, "as a member of the federal family," to apply for benefits under a new program, called the Federal Long Term Care Insurance Program ("FLTCIP"). (SAC ¶ 13.) The application that Rouse filled out was captioned "The Federal Long Term Care Insurance Program," and stated that the FLTCIP was sponsored by the Office of Personnel Management, offered by John Hancock Life Insurance Company and Metropolitan Life Insurance Company, and was administered by Long Term Care Partners, LLC (hereinafter "LTCP"). (SAC ¶ 14.)

Rouse submitted his application for long-term health care benefits on July 9, 2002. (SAC ¶ 15.) Rouse's application for long term benefits contained several questions. As relevant here, at Part B, question 5 of the application, Plaintiff was required to answer:

> Do you currently use any of the following medical devices, aids, or treatments? -Hospital bed -Motorized scooter -Oxygen -Stair lift -Dialysis -Wheelchair –Walker.

(SAC ¶ 16.) Mr. Rouse circled that he used a wheelchair. According to the application:

> if the answer is "Yes" to any of the questions 4-7, you are not eligible for any of the insurance options under this program shown in Part F of this form.

(*Id.*) The application did not inquire further as to Plaintiff's health condition.

On August 16, 2002, Rouse received a letter from LTCP stating that he was denied coverage under the FLTCIP because he answered that he used a wheelchair in Part B, question 5 of the long-term health care benefits form. (SAC ¶ 17.)

As set forth in the Second Amended Complaint, based on the denial, Rouse filed a charge of discrimination, exhausted his administrative requirements, and ultimately filed this lawsuit. Rouse's Second Amended Complaint sounds in three counts, as follows:

1) Section 504 of the Rehabilitation Act against both OPM and its contractor LTCP.[1] Section 504 commands that no qualified individual with a disability shall be denied the benefits of, or be subjected to discrimination under a program receiving Federal financial assistance;

2) Section 501 of the Rehabilitation Act against OPM. Section 501 which commands the Federal government to, among other things, play a leadership role in promoting the employment of individuals with disabilities and also forbids discrimination based on disability in Federal employment; and

3) Request for Declaratory Judgment.

OPM has moved to dismiss Counts I and II each under a different theory. As described below, OPM's motion to dismiss is without merit and should be denied. Limited discovery is essential to resolving the issues raised in this case, and Rouse requests that the Court set forth a discovery schedule as soon as the Motion is denied.

## ARGUMENT

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only when it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000) (citations omitted); *Saunders v. Hankerson*, 312 F. Supp. 2d 46, 71 (D.D.C. 2004). The Court should accept as true all factual

---

[1] Plaintiff's Section 504 claim is brought against both OPM and LTCP and LTCP is now a Defendant in this case. See Minute Order of May 24, 2007.

allegations in the complaint, and give plaintiff the benefit of all inferences that can be drawn from the facts alleged. *See Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996).

I.    **At Count I, Rouse States a Cognizable Violation of Section 504 of the Rehabilitation Act.**

At Count I of the Second Amended Complaint, Rouse alleges that OPM violated Section 504 of the Rehabilitation Act when it contracted with an entity (Defendant LTCP) that resulted in his being denied of benefits of, and discriminated against in LTCP's administration of, the FLTCIP. OPM believes that Rouse's Section 504 claim is foreclosed by "binding D.C. precedent holding that disability-based employment discrimination claims brought by federal employees are governed exclusively by § 501." (OPM's Reply in Support of Motion to Dismiss (the "Reply") at 3.) OPM's argument on Count I misses the point of Rouse's claim because under Count I Rouse is not seeking an alternate route for an employment discrimination claim – rather, the essence of Count I is that OPM and LTCP excluded Rouse from participation in the FLTCIP because he is disabled. And the "binding D.C. precedent" to which OPM refers is one inapposite summary judgment decision based on a pure employment discrimination claim. As described below, OPM's motion to dismiss Count I must be denied.

Under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States, as defined in Section 7(20), shall, solely by reason of her or her disability, be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or . . . conducted by any Executive agency." 29 U.S.C. § 794(a).

4

Rouse alleged in his Second Amended Complaint that OPM violated Section 504 when it excluded Rouse – solely by reason of his disability – from participation in the FLTCIP (a program, activity or entity that receives federal financial assistance), denied him the benefits of the FLTCIP, and subjected him to discrimination under the FLTCIP. (SAC ¶ 39.) This point can hardly be disputed. Rouse further alleged that OPM violated Section 504 when it, among other things, contracted with LTCP, or otherwise suffered LTCP's decision to refuse Rouse – and others with similar disabilities – a benefit of employment based on his – and their – disabilities. (SAC ¶ 40.) By engaging in a contract with LTCP, which denies federal employees coverage based on their disabilities, OPM has violated Section 504. (SAC ¶ 41.)[2]

According to OPM, Rouse fails to state at claim at Count I, because D.C. Circuit precedent "conclusively establishes that a federal employee may not bring an employment discrimination claim under § 504." Reply at 7. *See also* Motion at 13. On this point, OPM relies upon a single case, *Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003), in support of its theory. *Taylor*, which turned on summary judgment and not a motion to dismiss, is inapposite. In *Taylor*, the plaintiff's Section 504 claim was premised on her allegation that she received poor performance reviews based on her weight, which she contended was a disability under the Rehabilitation Act. Notably, in *Taylor*, there was no federal program (such as the FLTCIP) implicated – the claim in *Taylor* was a pure employment discrimination case.

In upholding the district court's dismissal of plaintiff's Section 504 claim in *Taylor*, the D.C. Circuit explained that an employee of the federal government may not

---

[2] And, as alleged in the SAC, by administering the FLTCIP in a manner which denies Rouse and others with similar disabilities from participation, LTCP has also violated Section 504.

bring an alternative employment discrimination claim under Section 504 of the Rehabilitation Act, under the theory that such claims should be brought under Section 501. *Id.* at 1291. The D.C. Circuit set forth the rationale for its holding as follows:

> Employees of the Smithsonian Institution are not participants in or beneficiaries of a 'program or activity conducted by any Executive agency'; they are Government employees.

*Id.* Put differently, because the plaintiff in *Taylor* was not a participant in or beneficiary of a federal program, she had no standing to bring a claim under Section 504.

The instant case is readily distinguishable from *Taylor*. Here, the essence of Rouse's case is that he is *both* a federal employee *and* a participant in a "program or activity conducted by" an Executive agency. Rouse does not only allege that OPM discriminated against him solely based on his terms or conditions of employment – he also alleges that he is a participant in a program or activity conducted by OPM and administered by LTCP, *viz.*, the FLTCIP. (SAC ¶ 39.) And, by denying Rouse the benefits of that federal program based solely on his disability (or by suffering LTCP's decision to do so), OPM and LTCP violated Section 504 of the Rehabilitation Act.

Because Rouse states a cognizable claim under Count I of the Second Amended Complaint, OPM's effort to dismiss Count I should be denied.

## II.   At Count II Rouse States a Cognizable Violation of Section 501 of the Rehabilitation Act.

At Count II of his Second Amended Complaint, Rouse alleges that OPM violated Section 501 of the Rehabilitation Act, which prohibits discrimination against a qualified individual with a disability based on the terms, conditions, and privileges of employment. Under the ADA, it is unlawful for an employer to discriminate on the basis of disability against a qualified individual with a disability in regard to "terms, conditions, and

6

privileges of employment."[3]  42 U.S.C. § 12112(a).  The EEOC's regulations implementing the employment provisions of the ADA further provide that it is unlawful for an employer to discriminate on the basis of disability against a qualified individual with a disability in regard to "[f]ringe benefits available by virtue of employment, whether or not administered by the [employer]."  29 C.F.R. § 1630.4(f). Further, the ADA prohibits employers from entering into, or participating in, a contractual or other arrangement or relationship that has the effect of discriminating against their own qualified applicants or employees with disabilities.  42 U.S.C. § 12112(b)(2); 29 C.F.R. § 1630.6(a).  Contractual or other relationships with organizations that provide fringe benefits to employers are expressly included in this prohibition.  42 U.S.C. § 12112(b)(2); 29 C.F.R. § 1630.6(b).

OPM's argument in favor of dismissing Count II focuses solely on the application of the so-called "safe harbor" provisions set forth in § 12201(c) of the ADA, and it devotes the vast bulk of its memorandum to discussing whether Plaintiff alleged sufficient facts demonstrating that the LTCIP is a "subterfuge" for violating the purposes of Rehabilitation Act.

As relevant here, Section 12201(c) provides that the sections of the ADA dealing with discrimination shall not be construed to prohibit or restrict - -

> (3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.  [This paragraph] shall not be used as subterfuge to evade the *purposes* of subchapter I and III of this chapter.

---

[3] Section 501 of Rehabilitation Act incorporates the standards set forth in the ADA as follows: "standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under Title I of the [ADA] . . . and the provisions of sections 501 through 504, and 510 of the [ADA], as such sections relate to employment."  29 U.S.C. § 791(g).

42 U.S.C. § 12201(c) (emphasis added). In explaining the purpose of the safe harbor provision, the House Judiciary Committee wrote:

> The Committee added this provision because it does not intend for the ADA to affect legitimate classifications of risks in insurance plans, in accordance with state laws and regulations under which such plans are regulated . . . .
>
> Specifically, Section 501(c) [42 U.S.C. § 12201(c)(1)] makes it clear that insurers may continue to sell to and underwrite individuals applying for life, health or other insurance on an individually underwritten basis . . . *so long as the standards used are based on sound actuarial data and not on speculation.*
>
> Section 501(c)(2) [42 U.S.C. § 12201(c)(2)] recognizes the need for employers, and their agents, to establish and observe the terms of employee benefit plans *so long as these plans are based on legitimate underwriting or classification of risks.*
>
> *In sum ADA requests that underwriting and classification of risks be based on sound actuarial principles or be related to actual or reasonably anticipated experience.*

H.R. Rep. 101-485(III), 101st Cong. 2nd Sess. 1990, reprinted in 1990 U.S.C.C.A.N. 493-96 (emphasis added). Thus, to the extent this Safe Harbor provision is even applicable to the Rehabilitation Act, (and Plaintiff does not concede that it does apply to this case),[4] the burden is on OPM to demonstrate that the discriminatory practice is based on legitimate underwriting or classification of risks.

OPM devotes much of its effort to discussing the Supreme Court's decision in *Public Employees Retirement System v. Betts*, 492 U.S. 158 (1989), a case decided under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. In *Betts* the Supreme Court held that an employee bears the burden of proving the discriminatory

---

[4] By contracting with LTCP to provide long term care insurance to federal employees and contracting away the rights of all individuals who use wheelchairs, without any analysis or explanation, OPM plainly violated the Rehabilitation Act. LTCP has provided nothing other than conclusory statements that the "Safe Harbor" provision of the ADA applies to the Rehabilitation Act under these circumstances.

plan provision "actually was intended to serve the purpose of discriminating in some non-fringe benefit aspect of the employment relation." *Betts*, 492 U.S. at 181. OPM's reliance upon *Betts* is misplaced, as OPM's denying individuals with disabilities entry into the FLTCIP violates the core purpose of the Rehabilitation Act – the federal government's fostering of employment of individuals with disabilities. In other words, Rouse has adequately alleged that the FLTCIP, through OPM and LTCP, actually serves to undermine the purpose of the Rehabilitation Act.

Indeed, the purpose of the Rehabilitation Act of 1973 is to empower individuals with disabilities in the employment context and to ensure that the federal government plays a leadership role in promoting the employment of such individuals. In particular, under 29 U.S.C. § 701(b), the purpose of the Rehabilitation Act is, among other things, "(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society." In addition, under 29 U.S.C. § 701(b), another purpose of the Rehabilitation Act is "(2) to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with significant disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living."

Further, under 29 U.S.C. § 701(c): "It is the policy of the United States that all programs, projects, and activities receiving assistance under this Act shall be carried out in a manner consistent with the principles of— (1) respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed

choice, of individuals with disabilities; (2) respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals . . . ."

It is the policy of the United States that "all programs, projects, and activities receiving assistance under this Act shall be carried out in a manner consistent with the principles of— (1) respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities; (2) respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals . . . ."  29 U.S.C. § 701(c). To further that national policy, Section 501 of the Rehabilitation Act, commands that each executive branch, department, agency, and instrumentality is required to have an affirmative action plan, to be updated annually, that "provides sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities."  29 U.S.C. § 791(b).

In his Second Amended Complaint, Rouse has alleged that, to the extent the Safe Harbor provision applies, the FLTCIP is a subterfuge to evade the purposes of the Rehabilitation Act.  (SAC ¶ 54.)  It simply cannot be disputed that if the purpose of the Rehabilitation Act is to foster the employment of individuals with disabilities, and OPM (and LTCP) blatantly refuse to allow individuals in wheelchairs to gain entry to the program, the very purpose of the Rehabilitation Act is evaded.  On this point, in its Reply, OPM asserts the weak argument that the Safe Harbor provision specifically allows benefit plans to provide "different levels of benefits to the disabled."  Reply at 7.  In support of this concept, OPM relies on a series of cases that allow employers to provide different levels of benefits to those with mental disabilities from those with physical

10

disabilities. That entire line of cases is readily distinguished from the allegations here, because the FLTCIP flatly denies entry to all individuals who use a wheelchair as opposed to those who do not use a wheelchair – it is not simply a distinction between those with different levels of disabilities. The flat prohibition of coverage is entirely arbitrary. Thus, Rouse has met his burden of alleging that OPM intended to evade the purposes of the Rehabilitation Act when it denied Rouse access to the FLTCIP. OPM has failed to cite a single applicable case in support of its notion – and that is not surprising, because this is a case of first impression.

According to OPM, Rouse's interpretation on this point would render the Safe Harbor a nullity "as any difference in benefits might be challenged on the grounds that it discourages employment of the disabled and creates a stigma." Reply at 7. OPM's concern here is misplaced. There is simply no difference in benefits in this case; rather, there are no benefits if you happen to use a wheelchair. Federal employees (such as Iraq war veterans and the like) deserve much better from their federal benefits programs.[5]

Rouse has stated a cognizable claim at Count II of his Second Amended Complaint, and OPM's effort to dismiss Count II should be denied.

---

[5] This program is at odds with the federal government's civil service program and calls into question myriad federal programs. For example, military veterans and the disabled are provided preferential hiring "points" for civil service, yet ironically these same individuals are denied the ability to enjoy long term care benefits – arbitrarily – if they use a wheelchair.

11

**III.     Conclusion.**

For the foregoing reasons, OPM's motion to dismiss should be denied.

Dated:          June 7, 2007                    Respectfully submitted,

//s// *James C. Bailey*

_____

James C. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
T:  202-787-3869
F:  202-318-7071
E:  jcb@becounsel.com

**Attorneys for Plaintiff**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2007, a true and correct copy of the foregoing was served via first the District Court's ECF filing system upon the following:

Justin M. Sandberg
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 514-3489
E-mail: justin.sandberg@usdoj.gov

Anthony F. Shelley
MILLER & CHEVALIER, CHARTERED
655 15th Street, NW
Suite 900
Washington, DC 20005-5701
(202) 626-5924
Fax: (202) 628-0858
E-mail: ashelley@milchev.com