IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RALPH D. ROUSE, JR., )<br>)<br>    Plaintiff, )<br>)<br>   v. )<br>) Civil Action No. 06-2088 (RWR)<br>LINDA M. SPRINGER, Director, U.S. Office )<br>of Personnel Management, )<br>)<br>    Defendant. )<br>) | |

## SUPPLEMENTAL REPLY IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

After two amended complaints and a three-month delay in responding to defendant's motion to dismiss, plaintiff has still failed to rectify any of the fundamental, fatal deficiencies in his claims under the Rehabilitation Act, 29 U.S.C. § 701 et seq.  In fact, plaintiff's belated opposition brief is littered with errors.  Plaintiff applies the wrong standard to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (notwithstanding defendant's notice of supplemental authority regarding Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), which should have put plaintiff on the right course), mischaracterizes the ground upon which defendant seeks to dismiss his claims (brought under §§ 501 & 504 of the Rehabilitation Act, 29 U.S.C. §§ 791 & 794), misunderstands his pleading obligations, ignores controlling D.C. Circuit precedent in favor of a House of Representatives' committee report, misinterprets the safe harbor provision

1

of the Americans with Disabilities Act ("ADA"),[1] 42 U.S.C. § 12201(c), draws a specious distinction between this case and cases cited by defendant, and misstates the scope of § 504 of the Rehabilitation Act.  See Plaintiff's Memorandum in Opposition to Defendant Linda Springer's Motion to Dismiss, June 7, 2007 ("Opposition").  None of plaintiff's arguments alters the fact that the safe harbor provision of the ADA allows benefit plans to furnish different levels of benefits to the disabled.  See Memorandum in Support of Motion to Dismiss, March 16, 2007 ("Motion to Dismiss"), at 9-12.  On this basis alone, the Court should dismiss all of plaintiff's claims.  In addition, the Court should dismiss plaintiff's § 504 claim because § 501 provides the sole avenue for relief under the Rehabilitation Act for employment-related discrimination claims.  Id. at 13.

## ARGUMENT

1.  At the outset, plaintiff announces that "[a] motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only when it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Opposition at 3 (citation and quotation omitted).  The only problem with this statement is that the Supreme Court emphatically rejected the venerable "no set of facts" standard in Twombly, 127 S. Ct. at 1969.  In Twombly, the Court decided that this "no set of facts" language has "earned its retirement" and is "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  Id.  To articulate a claim capable of surviving a Rule 12(b)(6) motion, the Court explained, a complaint must contain "enough facts to state a claim that is plausible on its face."

---

[1] The ADA provides the standards for determining whether §§ 501 and 504 of the Rehabilitation Act have been violated.  See 29 U.S.C. §§ 791(g), 794(d).

Id. at 1974.  As defendant pointed out in its Motion to Dismiss, its first reply, and its Notice of Supplemental Authority, May 31, 2007 ("Notice"), and as explained below, plaintiff has failed to meet the this standard.  Motion to Dismiss at 12; Reply in Support of Motion to Dismiss, April 9, 2007 ("Reply"), at 5-7; Notice at 1-2.

     2.    Plaintiff also errs in insisting that "OPM has moved to dismiss Counts I and II each under a different theory."  Opposition at 3.  Defendant has advocated dismissal of both the §§ 501 and 504 claims on the same theory, namely, that the safe harbor provision of the ADA requires it:  The safe harbor provision allows benefit plans to provide different levels of benefits to individuals on the basis of disability unless the differentiation is a "subterfuge to evade the purposes of" the law's non-discrimination provisions, 42 U.S.C. § 12201(c), and plaintiff has not alleged any facts which, if proven, would demonstrate a subterfuge that falls outside of the scope of the safe harbor provision.[2]  Reply at 5-7.

    Plaintiff contends that he has satisfied his obligation to plead subterfuge because he has alleged that defendant has discriminated against him in contravention of the core purpose of the Rehabilitation Act, which is, in his words, to "foster the employment of individuals with disabilities."  Opposition at 10; see also 42 U.S.C. § 12201(c) (stating that the safe harbor provision "shall not be used as a subterfuge to evade the purposes of" the ADA's non-discrimination provisions).  Plaintiff's argument should be rejected because it does not satisfy either prudential standing requirements, Kowalski v. Tesmer, 543 U.S. 125, 129-130 (2004), or

---

[2] Defendant has also argued that plaintiff's § 504 claim should be dismissed because the D.C. Circuit has held that § 501 offers the only vehicle for pursuing employment-related discrimination claims under the Rehabilitation Act.  See Motion to Dismiss at 13.  But this is an argument by way of addition, not substitution.  See id. ("Plaintiff's s 504 claim should be dismissed for a second reason.") (emphasis added).

the pleading standard created by Public Employees Retirement Sys. v. Betts, 492 U.S. 158, 176 (1989), and Twombly, 127 S. Ct. at 1974.

In accord with Betts and Twombly, to articulate a cognizable allegation of subterfuge, plaintiff would have to allege facts indicating that defendant has discriminated against him, in violation of a substantive provision of the ADA, with the intention of discriminating with respect to an aspect of his employment relationship not covered by the safe harbor clause.  See Motion to Dismiss at 11-12; Betts, 492 U.S. at 181.  Plaintiff's claim that the government has not "foster[ed]" the employment of individuals with disabilities does not suffice.  Opposition at 10; Second Amended Complaint, May 24, 2007 ('Second Amend. Compl."), ¶ 54.  As an initial matter, plaintiff lacks standing to raise this claim.  Plaintiff cannot rely on the contention that defendant's long-term care insurance plan has dissuaded disabled individuals from seeking federal employment, because he currently works in the federal government, Second Amend. Compl. ¶ 6, and "a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" Kowalski, 543 U.S. at 129-130 (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)).  Similarly, plaintiff cannot rely on the allegation that the plan has affected the progress of disabled individuals' careers because he has not alleged that defendant's insurance plan has impeded his career advancement in any way.  See Second Amend. Compl.; Kowalski, 543 U.S. at 129-130.  Standing aside, plaintiff's claim falls short because he alleges no facts which, if proven, would demonstrate that defendant adopted the long-term care insurance plan with the intention of discriminating against him with respect to an aspect of his employment relationship not protected by the safe harbor clause.  See Motion to Dismiss at 12 (and sources cited therein); Reply at 5-7; Notice at 1-2.

3.      Relying exclusively on a House of Representatives' committee report, H.R. Rep. 101-485 (III), at 71 (1990), plaintiff maintains that "the burden is on OPM to [establish that the safe harbor provision applies] by demonstrat[ing] that the discriminatory practice is based on legitimate underwriting or classification of risks." Opposition at 8. Here plaintiff is wrong again, and grievously so. The D.C. Circuit has explicitly rejected the argument that the ADA requires a defendant to offer an actuarial justification for a disability-based distinction in order to benefit from the safe harbor provision. Moderno v. King, 82 F.3d 1059, 1065 (D.C. Cir. 1996); see also EEOC v. Aramark, 208 F.3d 266, 272 (D.C. Cir. 2000) (reaffirming Moderno's eschewal of the "uniformly rejected actuarial justification theory"). The Court has reasoned that such an actuarial-justification requirement is "at odds with the plain language of the statute itself." Moderno, 82 F.3d at 1065.

In Leonard F. v. Israel Discount Bank, 199 F.3d 99, 105 (2d Cir. 1999), the Second Circuit reached the same conclusion as the D.C. Circuit with respect to the misbegotten actuarial-justification theory and, in the course of doing so, addressed the argument that H.R. Rep. 101-485 (III) supports this "uniformly rejected" theory. The court initially noted that the actuarial-justification theory could not be squared with the plain language of the statute because (i) the statute makes no reference to actuarial data and (ii) the term "subterfuge" refers to deception by artifice, not simply the absence of data. Id. What is more, the court added, even if it were to conclude that the legislative history supported plaintiff's argument, it could not "afford [the committee report] primacy over the incompatible language in the act," because the act, and not the committee report, is the law. Id. In sum, Congress enacts statutes, not committee reports, and the D.C. Circuit has held that the ADA does not require an actuarial justification.

4.      Plaintiff also argues that the safe harbor provision is not applicable to this case because OPM has entered into a contract with Long Term Care Partners which does not provide full long-term care coverage to disabled employees. Opposition at 8. This argument is simply irreconcilable with the plain text of the statute. Essentially, plaintiff is arguing that the safe harbor provision does not apply to this case because defendant did what the safe harbor provision allows. The safe harbor provision allows defendant to provide different level of benefits to individuals with disabilities (unless the differentiation is a subterfuge, and plaintiff has not properly alleged that it is, see, e.g., Reply at 5-7), and that is all that defendant has done here. Id. at 6-7. It makes no sense to argue – except to the extent that the argument suggests the outcome that plaintiff desires – that a statutory provision does not apply because defendant has done that which the provision allows.

5.      Next, plaintiff contends that "OPM relies on a series of cases that allow employers to provide different levels of benefits to those with mental disabilities [than to] those with physical disabilities," and the "entire line of cases is readily distinguishable from the allegations here, because the [Federal Long Term Care Insurance Program] flatly denies entry [into the program] to all individuals who use a wheelchair as opposed to those who do not use a wheelchair – it is not simply a distinction between those with different levels of disabilities." Opposition at 10-11. This argument too lacks merit. First, defendant does not rely solely on cases involving the question of whether mental disabilities must be insured to the same extent as physical disabilities. For example, Krauel v. Iowa Methodist Med. Ctr., 95 F.3d 674, 677 (8th Cir. 1996), involved allegations that a benefit plan unlawfully distinguished between fertility disorders and other physical disorders, and Piquard v. City of East Peoria, 887 F. Supp. 1106,

1112 (C.D. Ill. 1995), involved allegations that a benefit plan discriminated against individuals with physical disabilities via-à-vis those with no disabilities. Second, the program does not "flatly den[y] entry" to those who use wheelchairs. If an insurance applicant does not qualify for full long-term care insurance, the program "offers the applicant either or both of the following: (1) an Alternative Insurance Plan, which is limited to nursing home coverage and has a 180-day waiting period; or (2) a Service Package that includes access to a care coordinator, referral services, and a discounted network of long term care providers and services." Gunson v. James, 364 F. Supp. 2d 455, 459 (D.N.J. 2005).

That the cases relied upon by defendant involve different kinds of alleged distinctions underscores the relevant aspect of these cases, which is not their precise factual setting, but their recognition of the fact that the safe harbor clause allows benefit plans to furnish different levels of benefits to individuals on the basis of disability so long as the differentiation does not amount to prohibited subterfuge. Motion to Dismiss at 9-12. The factual distinctions highlighted by plaintiff are irrelevant. The subterfuge clause does not apply any more or any less to a plan because the plan draws a distinction between those with mental and physical disabilities as opposed to some other distinction, or because it provides more limited coverage or even no coverage based on a disability-based distinction. See 42 U.S.C. §12201(c). The applicability of the safe harbor clause turns on whether (i) the defendant is a "covered entity" under the ADA, (ii) the plan is bona fide, (iii) the plan is governed by state law, and (iv) the challenged distinction amounts to subterfuge. See id. There is no statutorily prescribed requirement for some minimum level of benefits for the disabled in order for the safe harbor clause to apply. Therefore, as

explained above and in earlier filings, the safe harbor clause applies to this case. See Motion to Dismiss at 9-12; Reply at 5-7.

6. Finally, plaintiff argues that he may raise a § 504 claim because "he does not only allege that OPM discriminated against him solely based on his terms or conditions of employment – he also alleges that he is a participant in a program or activity conducted by OPM[,] * * * the [Federal Long Term Care Insurance Program]." Opposition at 6. Plaintiff misstates the reach of § 504, which provides that "no otherwise qualified person" shall, on the basis of his or her disability, be "subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency."

The D.C. Circuit held in Taylor v. Small, 350 F.3d 1286, 1291 (D.C. Cir. 2003), that § 501 provides the sole avenue for relief for employment-related discrimination claims under the Rehabilitation Act and, concomitantly, that "§ 504 does not provide federal employees an 'alternative route for relief under the [ ] Act.'" Id. (quoting Rivera v. Heyman, 157 F.3d 101, 104 (2d Cir. 1998)). An alternative route for relief is precisely what plaintiff seeks. Plaintiff challenges the exact same conduct – OPM's decision to enter a contract with Long Term Care Partners which does not offer full long-term care insurance to those in wheelchairs – under § 504, Second Amend. Compl. ¶¶ 33-42, that he challenges under § 501, Second Amend. Compl. ¶¶ 43-54, the Rehabilitation Act provision under which employment-related claims are to be brought, Taylor, 350 F.3d at 1291. See Second Amend. Compl. ¶ 40 (admitting that long-term care insurance is a "benefit of employment"). In essence, plaintiff claims that defendant's conduct amounts to employment-related discrimination in violation of § 501 and, alternatively,

8

discrimination in the conduct of a federal program in violation of § 504. As the language from Taylor quoted above demonstrates, the D.C. Circuit has held explicitly that a plaintiff may not bring a claim under § 504 that he could bring under § 501 ("§ 504 does not provide federal employees an 'alternative route for relief under the Rehabilitation act'"); if a claim is employment related, it can, and must, be pursued under § 501. See Taylor, 350 F.3d at 1291 ("Congress addressed discrimination against Government employees *** in § 501, it is highly unlikely that Congress meant to address the subject again in § 504.").

Taylor's conclusion makes sense. Congress addressed discrimination against government employees in § 501 and set out administrative-exhaustion requirements for such claims (which are more onerous than the exhaustion requirements applicable to § 504 claims). See, e.g., McGuinness v. U.S. Postal Service, 744 F.2d 1318, 1321-1322 (7th Cir. 1984). If a federal employee could bring an employment-related claim pursuant to § 504, then he or she could circumvent those exhaustion requirements, and for no good reason.[3]

---

[3] Plaintiff attempts to diminish the force of Taylor by suggesting that it is an outlier and that its procedural posture meaningfully distinguishes it from this case. Response 4-5. Both suggestions are incorrect. The Taylor court is not a lone voice in the wilderness. Prior to Taylor, the D.C. Circuit had "twice strongly suggested that litigants [bringing employment-related discrimination claims] proceed under § 501," Taylor, 350 F.3d at 1291 (citations and quotations omitted), and the majority of courts to have addressed the issue have reached the same conclusion as the Taylor court, id. (collecting cases). Also, there is nothing about the procedural posture of Taylor that meaningfully distinguishes it from this case. In a couple of places, plaintiff emphasizes that the Taylor case involved an appeal from an entry of summary judgment, whereas the parties in this case are briefing a motion to dismiss. Response at 4, 5. But whether a plaintiff can bring an employment-related claim under § 504 is a question of statutory interpretation, and the statute does not change at different stages of a proceeding.

## **CONCLUSION**

For the above stated reasons, and those in defendant's motion to dismiss, initial reply, and notice of supplemental authority, the Court should dismiss this action.

Dated: June 25, 2007                                  Respectfully submitted,

                                                                          PETER D. KEISLER
                                                                          Assistant Attorney General

                                                                          JEFFREY A. TAYLOR
                                                                          United States Attorney

                                                                          JOSEPH W. LOBUE
                                                                          Assistant Director,
                                                                          Federal Programs Branch

                                                                          s/ Justin M. Sandberg
                                                                          JUSTIN M. SANDBERG
                                                                          (Ill. Bar. No. 6278377)
                                                                          Trial Attorney, Federal Programs Branch
                                                                          Civil Division
                                                                          U.S. Department of Justice
                                                                          P.O. Box 883
                                                                          Washington, D.C. 20044
                                                                          (202) 514-3489 (telephone)
                                                                          (202) 616-8202 (facsimile)

                                                                          Counsel for Defendant