IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Ralph D. Rouse, Jr. | : | |
| Plaintiff, | : | |
| v. | : | Case No. 06-cv-02088-RWR |
| Linda M. Springer, Director<br>U.S. Office of Personnel Management, | : | JURY TRIAL DEMANDED |
| | : | |
| and | | |
| | : | |
| Long Term Care Partners LLC, | | |
| | : | |
| Defendants. | | |
| _____ | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT LONG TERM CARE PARTNERS' MOTION TO DISMISS**

Plaintiff Ralph Rouse ("Plaintiff" or "Mr. Rouse") submits this Opposition to Defendant Long Term Care Partners ("LTC Partners") Motion to Dismiss the Second Amended Complaint and Memorandum in Support thereof (collectively the "Motion to Dismiss").

**I.    FACTUAL AND PROCEDURAL BACKGROUND.**

In its Motion to Dismiss, LTC Partners incorporates the arguments made by Defendant Linda Springer, Director, Office of Personnel Management ("OPM") and makes the additional argument that Plaintiff's claim for declaratory judgment, at Count III of the Second Amended Complaint should be dismissed as well.

Plaintiff has set forth the factual and procedural background in his opposition to OPM's motion to dismiss, and it need not be restated here, with one exception. LTC Partners states that it denied Plaintiff's insurance application "*because of high insurance risk* due to his use of a wheelchair." Motion to Dismiss at 2 (emphasis added). In fact,

LTC Partners never told Plaintiff that his application was denied *because of high insurance risk*, instead, as Plaintiff alleged, "he was denied coverage *because he answered that he used a wheelchair . . . .*" Second Am. Compl. ¶ 17 (emphasis added). LTC Partners' misstatement on this point is insightful in that it is at odds with OPM's position and appears to be a concession by LTC Partners that it bears the burden of demonstrating high insurance risk in connection with proving its affirmative defense under Section 501(c)(3) of the ADA.

Plaintiff has stated a prima facie case of disability discrimination under both Sections 501 and 504 of the Rehabilitation Act. Defendants have asserted, however, that Plaintiff bears the *additional* burden of alleging with special particularity a negative – that neither OPM nor LTC Partners can prove the affirmative defenses that may be available to them under Section 501(c)(3) of the ADA. But Defendants have not provided any authority that Plaintiff must plead the absence of the affirmative defense with particularity; and that is not surprising, considering that the evidence needed to determine the sufficiency of the affirmative defense is in the custody of the Defendants.

As described below, LTC Partners' Motion to Dismiss, like that of OPM, should be denied, and the Court should direct the parties to confer and develop a discovery plan.

## II. ARGUMENT.

### A. Introduction.

As a threshold matter, Plaintiff has stated a cognizable claim for discrimination under Sections 504 (Count I) and 501 (Count II) of the Rehabilitation Act. Generally, to state a cognizable claim under Section 504 of the Rehabilitation Act, Plaintiff must allege that he (1) is a qualified individual with a disability, (2) that he was excluded from

participation in, or denied the benefits of, a program or activity receiving Federal financial assistance or conducted by any Executive agency, (3) solely by reason of his disability. *See* 29 U.S.C. § 794(a). Plaintiff met the foregoing standard, in that he pleaded among other things: (1) he is a qualified individual with a disability, (paraplegia), (2) he was excluded from participating in the Federal Long-Term Care Insurance Program, (3) because of his disability.

To state a claim under Section 501 of the Rehabilitation Act, Plaintiff must allege that he (1) is a qualified individual with a disability, (2) who was discriminated against on the basis of that disability in regards to the terms, conditions, or privileges of employment. *See* 42 U.S.C. § 12112(a). Plaintiff met the foregoing standard, in that he pleaded: (1) he is a qualified individual with a disability, (paraplegia), (2) he was excluded on the basis of that disability from participating in the Federal Long-Term Care Insurance Program, which is a term, condition, or privilege of employment. *See also* 29 C.F.R. § 1630.4(f) (fringe benefits are a term, condition, or privilege of employment subject to the non-discrimination provisions of the Americans with Disabilities Act (and Rehabilitation Act)).

Defendants do not challenge the foregoing; rather, the issues Defendants raise in their respective motions to dismiss revolve around the extent to which Plaintiff must plead the non-applicability of their Safe Harbor affirmative defense. Plaintiff does not concede that he is obliged to allege with particularity the absence of the Defendants' Safe Harbor affirmative defense. And, to the extent that he must allege the absence of the affirmative defense, Plaintiff maintains that he has met his pleading burden.

3

      **B.**    **Plaintiff Need Not Allege the Absence of the Safe Harbor Affirmative Defense in his Complaint.**

LTC Partners, like OPM, places great significance on the recent holding of the Supreme Court of the United States, in *Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007). But they misplace their reliance on that case, because neither Defendant has averred that Plaintiff has insufficiently pleaded any of his causes of action (*i.e.*, that he is disabled, that he was denied participation in a program because of his disability, etc.). Rather, both defendants aver that Plaintiff has insufficiently pleaded the absence of the "Safe Harbor" affirmative defense that the Defendants believe is applicable. At the threshold, Plaintiff disagrees at this early stage he must plead the absence of the Safe Harbor affirmative defense. And, if he must do so, he maintains he has met his burden, and there is no authority to the contrary.

Generally, the "safe harbor" provision permits those insurers that are subject to the Rehabilitation Act to make otherwise discriminatory insurance decisions (including the denial of coverage) if those decisions are based upon either sound actuarial principles or reasonably anticipated experience. *See Doukas v. Metropolitan Life Insurance Co.*, 950 F. Supp. 422, 429 (D. N. H. 1996) (concluding that, to be protected by the safe harbor provision, "the insurance practice must either be based on actuarial data or on the company's actual or reasonably anticipated experience relating to the risk involved."); *see also Cloutier v. Prudential Insurance Co. of America*, 964 F. Supp. 299, 303-04 (N. D. Cal. 1997) ("insurers retain their § 501(c) exemption so long as their underwriting decisions are in accord with either (a) sound actuarial principles, or (b) actual or reasonably anticipated experience.") Where underwriting and classification of risks lack

such a basis, the insurance practice impliedly fails to comply with the ADA/Rehabilitation Act.  *Cloutier*, 964 F. Supp. at 303.

Relying on *Public Employees Retirement Sys. v. Betts*, 492 U.S. 158, 182 (U.S. 1989), Defendants argue that Plaintiff must allege, at this early stage, that the challenged provision is a "subterfuge to evade the purposes of the Rehabilitation Act" and that to demonstrate such a subterfuge, Plaintiff must allege with heightened particularity that the plan was intended to serve the purpose of "discriminating in some non-fringe-benefit aspect of the employment relationship."  *Betts*, however, turned on summary judgment, and does not speak to a pleading requirement.  Indeed, in that case, the Supreme Court held that the plaintiff failed to "meet her burden of *proving*" [and not simply "alleging"] "that the reduction in benefits . . . was the result of an intent to discriminate in some non-fringe-benefit aspect of the employment relation," and therefore summary judgment for the plaintiff was inappropriate.  *Id.*  The Supreme Court then *remanded* the matter to provide the plaintiff the opportunity to demonstrate the existence of a genuine issue of material fact on the issue.  At bottom, even the plaintiff in *Betts* – the case Defendants rely upon in support of their argument – was allowed to proceed beyond a threshold motion to dismiss to obtain discovery on the issue of the presence/absence of the affirmative defense.

It has long been recognized that the allocation of the burdens of production and proof in civil litigation is often a function of which party has the better initial access to probative data.  *See*, *e.g.*, *Piquard v. City of East Peoria*, 887 F. Supp. 1106, 1125 (C.D. Ill. 1995) ("In the health insurance context, the insurer has control of the risk assessment, actuarial, and/or claims data relied upon in adopting the challenged disability-based

5

distinction."). By contrast, a person who challenges a disability based distinction usually has no access to such data. *Id*. Where, as here, the defendants are in sole possession of the probative data, a threshold motion to dismiss should not be granted on the grounds that the plaintiff allegedly has not fulfilled some heightened pleading standard.

For example, in denying an insurance company's motion to dismiss in a similar case, the District Court for the Western District of Texas explained:

> the safe harbor provision may 'not be used as a subterfuge to evade the purposes' of the ADA, 42 U.S.C. § 12201(c), 'regardless of the date that an insurance or employer benefit plan was adopted.' H.R. Rep. No. 485, 101st Cong., 2d Sess., [**29] pt. 3 at 71 (1990), reprinted in 1990 U.S.C.C.A.N. 446, 494; see H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2 at 137 (1990), reprinted in 1990 U.S.C.C.A.N. 304, 420. Presuming the safe harbor provision is applicable, to prevail at this juncture Humana would have to establish a bona fide benefit plan engaged in lawful risk assessment and show their decisions were not a subterfuge for discrimination. *The record, however, does not contain the actuarial, statistical and empirical data used in making all of its payment decisions and utilization decisions for the individual treatment decisions of the individual patients.* The Humana defendants' affirmative defense argument they are insulated from liability and protected from further proceedings in this case by the safe harbor provision of the ADA is denied.

*Zamora-Quezada v. Healthtexas Med. Group*, 34 F. Supp. 2d 433, 444 (W.D. Tex. 1998) (emphasis added). Similarly here, Defendants' motions to dismiss should be denied because (1) Plaintiff does not have a burden to allege matters to be obtained in discovery; (2) Plaintiff has not had access to such data, and (3) discovery is necessary in order to allow the parties and the Court to adequately evaluate Plaintiff's claims.

### C.     Plaintiff Has Sufficiently Alleged the Absence of the Safe Harbor Affirmative Defense.

To the extent that Plaintiff must plead the absence of the Safe Harbor affirmative defense, he has met his burden.  As all parties agree, the Safe Harbor provision provides that the anti-discrimination provisions of the Americans with Disabilities Act (as applied here to Rehabilitation Act) "shall not be construed to prohibit or restrict - -

> (3) a person or organization covered by this chapter from establishing, sponsoring, observing or administering the terms of a bona fide benefit plan that is not subject to State laws that regulate insurance.  [This paragraph] shall not be used as *subterfuge to evade the purposes* of subchapter I and III of this chapter."

42 U.S.C. § 12201(c) (*emphasis added*).

Thus, the plain words of the Safe Harbor provision describe that the "subterfuge" applies to an "evasion" of the "purposes" of the anti-discrimination provisions of the ADA (and as applicable here, the Rehabilitation Act).  And, according to *Betts*, subterfuge is to be given "its ordinary meaning as a "scheme, plan, stratagem, or artifice of evasion."  492 U.S. at 167.  If these words are given their ordinary meaning, then the next appropriate step would be to analyze the *purposes* of the Rehabilitation Act in order to determine if there was a *plan* to *evade* such purposes.

Plaintiff has alleged that the *purpose* of the Rehabilitation Act is, among other things, "(1) to empower individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society" and to:

> ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities, especially individuals with significant disabilities, and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment and independent living.

29 U.S.C. § 701(b).  Further, under the Rehabilitation Act is:  "It is the policy of the United States that all programs, projects, and activities receiving assistance under this Act shall be carried out in a manner consistent with the principles of— (1) respect for individual dignity, personal responsibility, self-determination, and pursuit of meaningful careers, based on informed choice, of individuals with disabilities; (2) respect for the privacy, rights, and equal access (including the use of accessible formats), of the individuals . . . ."  29 U.S.C. § 701(c).

In light of all of this evidence pleaded by Plaintiff concerning the *purposes* of the Rehabilitation Act, it is impossible to see how an employee benefit plan/program that purposefully excludes individuals with disabilities from obtaining the fringe benefits offered could not be a *plan* to *evade* the *purposes* of the Rehabilitation Act.  The Defendants have offered no allegations to the contrary.  Rather, the Defendants make the specious argument that Plaintiff does not have "standing" to bring his claims.  That argument simply has no merit.

### D. Plaintiff Seeks a Declaratory Judgment.

In his Second Amended Complaint, Plaintiff sets forth at Count III a request for declaratory judgment.  LTC Partners seeks to dismiss Count III under the theory that the Declaratory Judgment Act does not provide for additional bases of jurisdiction, and, to the extent that Counts I and II would fail to state a claim, Count III must fail as well.  Plaintiff has also sought a declaratory judgment in his Prayer for Relief, so LTC Partners argument here is academic at best.

Plaintiff would note, however, that during the pendency of the administrative proceedings of his case before the Equal Employment Opportunity Commission, LTC

8

Partners actually sued Mr. Rouse – naming him personally as a defendant in a federal lawsuit – in the District of Maryland, for which he was forced to incur attorneys' fees and endure other aggravations (Mr. Rouse was dismissed from that action because, among other reasons, the District Court for the District of Maryland determined that it did not have personal jurisdiction over Mr. Rouse). The basis for LTC Partners lawsuit against Mr. Rouse was the Declaratory Judgment Act. LTC Partners' change in position is either (1) an admission that it never had a cognizable basis by which to sue Mr. Rouse in the District of Maryland, or (2) an indication that its argument as to Count III is without merit. In any event, because Plaintiff has included within his Prayer for Relief at Counts I and II of the Amended Complaint a request for declaratory judgment, dismissal of Count III would have no impact on the litigation.

### III. CONCLUSION.

LTC Partners Motion to Dismiss should be denied.

Dated: August 21, 2007                Respectfully submitted,

/s/ *James C. Bailey*

_____
James C. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Avenue NW
Suite 1100
Washington, D.C. 20036
T: 202-787-3869
F: 202-318-7071
E: jcb@becounsel.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 21, 2007, a true and correct copy of the foregoing was served via first the District Court's ECF filing system upon the following:

Justin M. Sandberg
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Avenue, NW
Washington, DC 20530
(202) 514-3489
E-mail: justin.sandberg@usdoj.gov

Anthony F. Shelley
MILLER & CHEVALIER, CHARTERED
655 15th Street, NW
Suite 900
Washington, DC 20005-5701
(202) 626-5924
Fax: (202) 628-0858
E-mail: ashelley@milchev.com

             /s/ *James C. Bailey*
             _____
             James C. Bailey